**No. 26-2623**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

SILVER SPRING JEWISH CENTER, INC.; RABBI J. MENASHE SHAPIRO,
*Plaintiffs-Appellants*,

v.

MONTGOMERY COUNTY, MARYLAND,
*Defendant-Appellee*.

---

On Appeal from the United States District Court for the District of Maryland
No. 8:26-cv-02963-DKC (Hon. Deborah K. Chasanow)

---

# PLAINTIFFS-APPELLANTS' MOTION FOR INJUNCTION PENDING APPEAL

---

Jacob Huebert
Andrew J. Morris
Markham S. Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
jacob.huebert@ncla.legal

*Counsel for Plaintiff-Appellant*
*Silver Spring Jewish Center, Inc.*

[Additional counsel listed on signature page]

12/01/2019 SCC

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by all parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2623 Caption: Silver Spring Jewish Center, Inc., et al. v. Montgomery County, Maryland

Pursuant to FRAP 26.1 and Local Rule 26.1,

Silver Spring Jewish Center, Inc.
(name of party/amicus)

who is appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☒ NO

2. Does party/amicus have any parent corporations? ☐ YES ☒ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☒ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☒ NO

   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☒ NO

   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☒ NO

   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☒ NO

   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Andrew J. Morris Date: November 10, 2026

Counsel for: Silver Spring Jewish Center, Inc.

12/01/2019 SCC

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
# DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by all parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2623 Caption: Silver Spring Jewish Center, Inc., et al. v. Montgomery County, Maryland

Pursuant to FRAP 26.1 and Local Rule 26.1,

Rabbi J. Menashe Shapiro
(name of party/amicus)

who is appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☒ NO

2. Does party/amicus have any parent corporations? ☐ YES ☒ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☒ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☒ NO

   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☒ NO

   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☒ NO

   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☒ NO

   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Andrew J. Morris Date: November 10, 2026

Counsel for: Pro se appellant

# TABLE OF CONTENTS

Page


INTRODUCTION ....................................................................................1

STATEMENT UNDER RULE 8(a)(2) AND LOCAL RULE 27(a) ........................2

BACKGROUND ......................................................................................3

A. Montgomery County's Firearms Bans ....................................................3

B. Plaintiffs .......................................................................................3

C. Proceedings Below ..........................................................................5

STANDARD ..........................................................................................6

ARGUMENT ..........................................................................................6

I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ...............................6

A. The 100-Yard Rule Violates the Second Amendment as Applied to Plaintiffs' Walk to Synagogue ........................................6

1. The County Failed to Meet Its Burden to Justify the 100-Yard Rule with Historical Analogues ..................................8

a. Places of Worship ..........................................................9

b. Parks ...........................................................................9

c. Schools .......................................................................10

d. The County's Late-Proposed Analogues .............................12

2. The District Court Applied an Incorrect Standard ......................13

3. Plaintiffs Brought, and the District Court Decided, an As-Applied Challenge ..............................................................14

B. The 100-Yard Rule Violates the Free Exercise Clause as Applied to Plaintiffs ..........................................................17

1. The Rule Burdens Plaintiffs' Sincere Religious Practice ...........17

2. The Rule Is Not Generally Applicable .......................................18

3. The Rule Fails Strict Scrutiny ..................................................20

II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION ..........................................................................................22

III. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR AN INJUNCTION ....................22

CONCLUSION ....................23

CERTIFICATE OF COMPLIANCE ....................25

CERTIFICATE OF SERVICE ....................25

INDEX OF ATTACHMENTS ....................26

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Centro Tepeyac v. Montgomery Cnty.*,
722 F.3d 184 (4th Cir. 2013) (*en banc*) ....................6, 22

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ....................21

*Citizens United v. FEC*,
558 U.S. 310 (2010) ....................16

*Doe v. Reed*,
561 U.S. 186 (2010) ....................15

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) .................... 17, 18, 20

*Gelin v. Balt. Cnty.*,
122 F.4th 531 (4th Cir. 2024) ....................6

*Holt v. Hobbs*,
574 U.S. 352 (2015) ....................21

*Jesus Christ Is the Answer Ministries, Inc. v. Balt. Cnty.*,
915 F.3d 256 (4th Cir. 2019) ....................20

*Kipke v. Moore*,
165 F.4th 194 (4th Cir. 2026) .................... 11, 12

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*,
2 F.4th 330 (4th Cir. 2021) (*en banc*) ....................22

*Md. Shall Issue, Inc. v. Montgomery Cnty.*,
680 F. Supp. 3d 567 (D. Md. 2023) .................... 8, 9, 10

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) .................... 7, 8, 13

*Nat'l Rifle Ass'n v. Bondi*,
61 F.4th 1317 (11th Cir. 2023) .................... 10

*Nken v. Holder*,
556 U.S. 418 (2009) ....................6

*Polk v. Montgomery Cnty. Pub. Schs.*,
166 F.4th 400 (4th Cir. 2026) ....................18

*Tandon v. Newsom*,
593 U.S. 61 (2021) (per curiam).................... 18, 19, 20

*United States v. Allam*,
140 F.4th 289 (5th Cir. 2025) ....................11

*United States v. Hemani*,
608 U.S. 772 (2026)....................13

*United States v. Lehman*,
8 F.4th 754 (8th Cir. 2021) .................... 13, 14

*United States v. Perez*,
145 F.4th 800 (8th Cir. 2025) ....................13

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000)....................21

*United States v. Rahimi*,
602 U.S. 680 (2024)....................16

*United States v. Taras*,
No. 25-cr-00262-DAD, 2026 WL 2364515 (E.D. Cal. Aug. 14, 2026)...... 10, 11

*United States v. Walter*,
No. 3:20-cr-0039, 2023 WL 3020321 (D.V.I. Apr. 20, 2023) ....................11

*United States v. Williams*,
No. 25-cr-00015-H-BMM, 2025 WL 3610039 (D. Mont. Dec. 12, 2025) ........11

*White Coat Waste Project v. Greater Richmond Transit Co.*,
35 F.4th 179 (4th Cir. 2022) ....................14

*Wolford v. Lopez*,
609 U.S. 185 (2026).................... 7, 8, 9

*Yee v. City of Escondido*,
503 U.S. 519 (1992)....................8

**STATUTES**

18 U.S.C. § 922(q)(2)(B)(ii) .................... 10, 21

28 U.S.C. § 1292(a)(1)....................6

Md. Code Ann., Crim. Law § 4-111 ....................21
Md. Code Ann., Pub. Safety § 5-305 ....................10
Md. Code Ann., Pub. Safety § 5-306 ....................10

**ORDINANCES AND LOCAL LEGISLATION**

Balt., Md., Code art. 19, § 59-5 ....................21
Gaithersburg, Md., Code § 15-16 ....................21
Montgomery Cnty., Md., Code § 57-1 .................... 3, 5, 19
Montgomery Cnty., Md., Code § 57-11 .................... passim
Montgomery Cnty., Md., Expedited Bill No. 23-26 (2026) ....................3
Prince George's Cnty., Md., Code § 14-140 ....................21
Takoma Park, Md., Code § 14.16.060(B)(6) ....................21

**RULES**

4th Cir. R. 27(a) ....................2
4th Cir. R. 8 ....................2
Fed. R. App. P. 8(a) ....................1, 2

## INTRODUCTION

Plaintiffs-Appellants Silver Spring Jewish Center ("SSJC") and Rabbi J. Menashe Shapiro move under Federal Rule of Appellate Procedure 8(a) for an injunction pending appeal barring Montgomery County from enforcing its ban on firearms within 100 yards of any "place of public assembly" against SSJC's members and Rabbi Shapiro while they walk between their homes and their synagogue on the Sabbath and Jewish holidays.[1]

The district court held that Plaintiffs are likely to succeed on their related Second Amendment and Free Exercise challenges to the County's ban on firearms in places of worship, and it preliminarily enjoined that ban as applied to them. Dkt. 35 at 22–55; Dkt. 36 at 1–2. But the 100-yard rule still prevents Plaintiffs from exercising that right on the Sabbath and Jewish holidays, when their religious beliefs require them to walk to synagogue, a trip that unavoidably passes within 100 yards of schools, parks, and other houses of worship.

The district court's refusal to extend relief to Plaintiffs' walk to synagogue rests on legal error. Most notably, on reconsideration, the court held that Plaintiffs had brought only a facial challenge, Dkt. 48 at 8–11, even though the court earlier

---

[1] Record citations are to the district court docket, No. 8:26-cv-02963-DKC (D. Md.), by ECF number and the page number in the ECF header. "Tr." refers to the transcript of the September 3, 2026 hearing, Dkt. 38.

recognized that, because Plaintiffs "seek relief only for themselves, they would only need to succeed on an as-applied challenge," Dkt. 35 at 15.

Meanwhile, in opposing preliminary relief, the County did not attempt to justify the 100-yard rule with historical evidence; agreed that the same licensed carriers could carry the same handguns along the same streets, so long as they drive; and did not oppose relief within the 100 yards surrounding Plaintiffs' synagogue. Dkt. 45 at 14 n.5.

Each Sabbath that passes without relief inflicts irreparable harm. The Court should enter an injunction pending appeal.

## STATEMENT UNDER RULE 8(a)(2) AND LOCAL RULE 27(a)

Plaintiffs moved first in the district court for an injunction pending appeal. Dkt. 39. The district court denied the motion on October 27, 2026, reasoning that, Plaintiffs did "not now seek relief distinct from what the court previously evaluated" and thus "have not met their burden for entry of an injunction pending appeal." Dkt. 48 at 19; Dkt. 49; *see* Fed. R. App. P. 8(a)(2)(A)(ii). The district court's opinions and orders, the parties' filings on both motions, and the relevant record items are attached. *See* Fed. R. App. P. 8(a)(2)(B); 4th Cir. R. 8. On November 5, 2026, Plaintiffs informed Defendant's counsel of this motion. Defendant opposes the motion and intends to file a response. *See* 4th Cir. R. 27(a).

## BACKGROUND

### A. Montgomery County's Firearms Bans

On July 27, 2026, Montgomery County, Maryland, enacted Expedited Bill No. 23-26, under which a person "must not … sell, transfer, possess, or transport a … handgun, rifle, or shotgun, or ammunition or major component for these firearms" "[i]n or within 100 yards of a place of public assembly." Montgomery County Code § 57-11(a)(1). The legislation defines "place of public assembly" to include any park, place of worship, school, library, government building, or polling place, and "all property associated with the place." *Id.* § 57-1. The rule exempts firearms "carried or transported in a motor vehicle if the firearm" (1) is "locked in a container," or (2) is a handgun carried by a person holding a Maryland permit to wear, carry, or transport it, *id.* § 57-11(b)(6)(A), (B).

### B. Plaintiffs

SSJC is an Orthodox Jewish synagogue in Silver Spring, Maryland. Dkt. 5-3 ¶ 1. Especially since October 7, 2023, antisemitic incidents have threatened its operations. For example, in October 2024, a visibly Jewish member was attacked just outside the building, and in June 2026, an unknown individual attempted to gain entry. *Id.* ¶ 2.

A central feature of SSJC's security plan is an armed volunteer security team (the "Security Team"), all members of which are licensed under Maryland law to

carry a firearm. *Id.* ¶¶ 3–4, 6. SSJC relies on volunteer members for both practical and *halachic* (Jewish law) reasons: Talmudic and later religious sources command Jews to proactively provide their own security and the security of other Jews, and in light of the threat environment, SSJC considers it a religious obligation to ensure that at least some members carry firearms. *Id.* ¶¶ 4, 7.

Like SSJC, Plaintiff J. Menashe Shapiro, an ordained Orthodox rabbi who holds a Maryland Wear and Carry Permit, holds the sincere religious belief that Jewish law requires him to carry a firearm for personal, family, and communal protection, a duty he must perform personally. Dkt. 5-2 ¶¶ 9–10.

On the Sabbath and Jewish holidays, the sincerely held religious beliefs of Rabbi Shapiro and SSJC's members require that they walk to the synagogue for communal prayer. *Id.* ¶ 11. The only path between Rabbi Shapiro's home and SSJC requires him to walk within 100 yards of four schools, two parks, and three other houses of worship—each one a "place of public assembly" under the Ban. *Id.* And SSJC itself is a place of worship—so the Ban prohibits members from even approaching the synagogue while armed.

Thus, the Ban "makes it impossible for SSJC's members and Plaintiff Shapiro to walk to the synagogue, as their beliefs require at particular times, while exercising their right to bear arms." Compl. ¶ 55, Dkt. 1.

### C. Proceedings Below

On July 30, 2026, Plaintiffs moved for a preliminary injunction barring enforcement of §§ 57-1 and 57-11(a)(1) "against Plaintiffs Silver Spring Jewish Center, Inc. and Rabbi J. Menashe Shapiro" in places of worship and within 100 yards of places of public assembly. Dkt. 5-5 at 1–2.

On September 10, the district court held that Plaintiffs are likely to succeed on their as-applied Second Amendment and Free Exercise challenges to that ban, found irreparable harm, concluded that the equities favored relief, and enjoined the ban's enforcement against Plaintiffs in "THEIR respective places of worship." Dkt. 35 at 22–55, 66–69; Dkt. 36 at 1–2.

But it denied relief as to the 100-yard rule. It treated Plaintiffs' Second Amendment challenge to that aspect of the law as facial and held that the challenge failed because a buffer around schools is likely constitutional; it rejected Shapiro's as-applied challenge because "he is like any other licensed gun carrier"; and, rejecting the Free Exercise challenge, it deemed the rule "neutral and generally applied." Dkt. 35 at 38–43, 55–56.

Plaintiffs timely moved for reconsideration or, alternatively, an injunction pending appeal. Dkt. 39. In opposition, the County—for the first time—offered purported historical analogues for the 100-yard rule. Dkt. 45 at 15–17. It also stated that it does "not oppose Plaintiffs' request for preliminary injunctive relief

as to the Buffer Zone specifically surrounding SSJC." *Id.* at 14 n.5. The court denied the motion without addressing that concession. Dkt. 48; Dkt. 49. Plaintiffs timely appealed. Dkt. 51; *see* 28 U.S.C. § 1292(a)(1); *Gelin v. Balt. Cnty.*, 122 F.4th 531, 537 (4th Cir. 2024).

## STANDARD

An injunction pending appeal is governed by the familiar factors: likelihood of success, irreparable harm, the balance of equities, and the public interest, the last two of which merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 434–35 (2009). A district court's legal conclusions are reviewed *de novo*, and a court abuses its discretion when it "appl[ies] an incorrect preliminary injunction standard" or "misapprehend[s] the law with respect to underlying issues in litigation." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (*en banc*).

## ARGUMENT

### I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

#### A. The 100-Yard Rule Violates the Second Amendment as Applied to Plaintiffs' Walk to Synagogue

As explained below, Plaintiffs' Second Amendment challenge on appeal is as-applied: the question is whether the County can justify applying the 100-yard rule to Plaintiffs' walk to synagogue past schools, parks, and houses of worship.

The Second Amendment protects "the right of Americans to carry arms for self-defense as they go about their daily lives." *Wolford v. Lopez*, 609 U.S. 185, 191 (2026). To determine whether a law regulating firearms violates the Second Amendment, a court must first determine whether the "Second Amendment's plain text covers" the "conduct" the law restricts. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). If it does, "the Constitution presumptively protects the conduct" and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

Here, the district court agreed the Second Amendment's plain text covers the conduct the 100-yard rule restricts. Dkt. 35 at 38–39. The rule therefore may only be upheld if the government meets its burden to show that it does "not infringe the historical understanding of the codified right." *Wolford*, 609 U.S. at 196.

To meet its burden, a government may cite "historical analogues … from which a court may draw a strong inference that the modern law at issue is consistent with the codified right." *Id.* In evaluating historical analogues, courts consider: (1) "the number of jurisdictions in which they were adopted"; (2) "the extent to which they were well-accepted"; and (3) "whether any analogue or collection of analogues is 'relevantly similar' to the modern law." *Id.* (quoting *Bruen*, 597 U.S. at 29, 36, 67).

### 1. The County Failed to Meet Its Burden to Justify the 100-Yard Rule with Historical Analogues

In response to Plaintiffs' preliminary-injunction motion, the County cited *no* historical analogues to support the 100-yard rule. For that reason alone, Plaintiffs should have prevailed; the government *always* bears the burden to justify restrictions on the right to keep and bear arms. *Bruen*, 597 U.S. at 17, 24; *see also id.* at 25 n.6 (courts are "entitled to decide a case based on the historical record compiled by the parties").

The County instead cited *Maryland Shall Issue, Inc. v. Montgomery County*, 680 F. Supp. 3d 567 (D. Md. 2023), which declined to preliminarily enjoin a previous version of the 100-yard rule. Dkt. 26-1 at 30. Neither that decision nor the analogues the County offered for the first time on reconsideration can carry the County's burden for any of the three relevant categories of places.[2]

#### a. Places of Worship

*Maryland Shall Issue* supplies no historical support for a 100-yard buffer around places of worship. Its buffer-zone discussion does not cite any Founding-

---

[2] The district court faulted Plaintiffs for not rebutting, in their preliminary-injunction briefing, the analogues that *Maryland Shall Issue* credited, and it refused to consider Plaintiffs' critique of those analogues on reconsideration. Dkt. 48 at 12–13. But Plaintiffs had no obligation to rebut analogues the County never identified. Regardless, on appeal, a party "can make any argument in support of" a properly presented claim. *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

era statute, ordinance, or decision involving a distance restriction around any place of worship. 680 F. Supp. 3d at 589–90.

**b. Parks**

The park-buffer analogues cited in *Maryland Shall Issue* consist of five municipal ordinances: Philadelphia (1870, 50 yards), St. Paul (1888, 50 yards), Pittsburgh (1893, 100 yards), Reading (1897, 50 yards), and Trenton (1903, 50 yards). *Md. Shall Issue*, 680 F. Supp. 3d at 589. Under the methodology prescribed by *Wolford*, these cannot suffice to meet the County's burden.

Three of the five ordinances come from Pennsylvania, so only three States are represented—fewer jurisdictions than the four States and two Territories the district court found insufficient for the places-of-worship ban, Dkt. 35 at 23–25—and each governed only a single city's parks. All but Philadelphia's (first enacted in 1868) postdate ratification of the Fourteenth Amendment, and that one preceded ratification by only months, Dkt. 45-6. A single local law cannot establish a "widespread, well-known, and widely accepted" tradition. *Wolford*, 609 U.S. at 211. The ordinances thus share the timing problem that doomed the worship analogues. Dkt. 35 at 27–29. And *Maryland Shall Issue* cites no judicial decision upholding any of them, while the district court found even the three decisions offered in support of the places-of-worship analogues unpersuasive. *Id.* at 32–36. Finally, *Maryland Shall Issue* credited these Reconstruction-era sources only by

relying on reasoning that, as the district court recognized, the *en banc* Eleventh Circuit has since repudiated. *Id.* at 26–27; *see* 680 F. Supp. 3d at 582–83 (citing *Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1322 (11th Cir. 2023), *reh'g en banc granted, opinion vacated*, 72 F.4th 1346 (11th Cir. 2023), *and vacated on reh'g en banc*, 133 F.4th 1108, 1116 (11th Cir. 2025) (*en banc*)).

**c. Schools**

The district court cited *United States v. Taras*, No. 25-cr-00262-DAD, 2026 WL 2364515 (E.D. Cal. Aug. 14, 2026), for the proposition that "courts across the country have found that there is a history and tradition of placing restrictions on firearm possession in the area surrounding schools." Dkt. 35 at 41 (quoting *Taras*, 2026 WL 2364515, at *6). But *Taras*—and the authorities it collects—cannot justify applying that restriction to Rabbi Shapiro and SSJC's members.

i. The federal statute *Taras* upheld—the Gun-Free School Zones Act—contains a critical exception that Montgomery County's 100-yard rule lacks: it does not apply to a person "licensed to [possess a firearm] by the State in which the school zone is located" if the State's licensing process requires law enforcement to "verify that the individual is qualified under law to receive the license." 18 U.S.C. § 922(q)(2)(B)(ii). Rabbi Shapiro and the Security Team members hold such licenses, issued only after a criminal history records check.

Md. Code Ann., Pub. Safety §§ 5-305, 5-306; Dkt. 5-2 ¶ 10; Dkt. 5-3 ¶ 6. The federal statute is therefore not relevantly similar to Montgomery County's law.

ii. The decisions on which *Taras* relied do not suggest otherwise. *United States v. Allam*, 140 F.4th 289 (5th Cir. 2025), emphasized that the Act's license exemption is one reason the statute "is not a categorical prohibition" and "materially ameliorate[s]" its burden. *Id.* at 293 n.4, 297. And *Allam* rejected an as-applied challenge by an unlicensed defendant who had "camped out only 40 feet from school grounds" and behaved so erratically and menacingly that the school changed "students' routines and traffic patterns"—conduct like that targeted by the historical Statute of Northampton and going-armed laws, which forbade carrying arms to terrorize others. *Id.* at 296–97, 299. Plaintiffs, who seek only to carry for self-defense while walking to synagogue, are nothing like that defendant. The other cases *Taras* cited—*United States v. Williams*, No. 25-cr-00015-H-BMM, 2025 WL 3610039 (D. Mont. Dec. 12, 2025), and *United States v. Walter*, No. 3:20-cr-0039, 2023 WL 3020321 (D.V.I. Apr. 20, 2023)—likewise involved the Act's 1,000-foot rule, which does not apply to state licensees like Plaintiffs.

iii. *Kipke v. Moore*, 165 F.4th 194, 212 (4th Cir. 2026), which found "school grounds … analogous to school buildings," does not provide a basis for rejecting Plaintiffs' challenge to the 100-yard rule. Plaintiffs do not challenge the

ban on school grounds, only its extension to the 100 yards beyond them, which *Kipke* did not address.

### d. The County's Late-Proposed Analogues

The analogues the County offered for the first time on reconsideration fare no better. Its polling-place laws postdate the Fourteenth Amendment, do not concern places of worship, parks, or schools, and applied only on election or registration days. Dkt. 45 at 15; Dkt. 45-1, § 1; Dkt. 45-3, § 1; Dkt. 45-4, § 73. The 1837 Maryland "Act for the Preservation of Wild Fowl" barred carrying a gun near a hunting blind only "with intent to shoot or molest any wild fowl." Dkt. 45-5, § 1. The 1887 New Mexico territorial law barred one from drawing, flourishing, or discharging a weapon—except "in the lawful defense of himself, his family or his property"—and expressly allowed travelers to "pass through settlements on their road without disarming." Dkt. 45-12, §§ 4, 9. The 1892 Mississippi law applied only to students, and only to weapons that everyone was already forbidden to carry concealed anywhere in the State. Dkt. 45-13, § 1030; Dkt. 47-1 at 3, § 1026. And the 1859 Connecticut law regulated the sale of liquor, not firearms. Dkt. 45-14.

Thus, even with a second bite at the apple, the County has identified no historical tradition of banning firearms within 100 yards of places of worship, parks, or schools.

### 2. The District Court Applied an Incorrect Standard

The government bears the same burden in as-applied Second Amendment challenges as in facial challenges. *See, e.g., United States v. Hemani*, 608 U.S. 772, 780 (2026).

The district court, however, did not require the government to justify the 100-yard rule with historical analogues in its September 10 ruling. Instead, it cited language from a pre-*Bruen* Eighth Circuit decision for the proposition that "to succeed on an as-applied [Second Amendment] challenge, [the party raising it] must establish (1) that the Second Amendment protects his particular conduct, and (2) that his particular prohibitor is insufficient to justify the challenged regulation of Second Amendment rights." Dkt. 35 at 15–16 (quoting *United States v. Lehman*, 8 F.4th 754, 757 (8th Cir. 2021)). Applying that formulation to Rabbi Shapiro, the court concluded that his as-applied challenge failed because he "is like any other licensed gun carrier" and had not "identif[ied] the particular reason he is prohibited that he claims is insufficient." *Id.* at 42–43.

That pre-*Bruen* standard placed a burden on Rabbi Shapiro that *Bruen* does not—and the Eighth Circuit itself no longer applies it. *See United States v. Perez*, 145 F.4th 800, 804 (8th Cir. 2025) (placing burden on the government in post-*Bruen* as-applied Second Amendment challenge). On reconsideration, the court stated that it "did not rely on the allocation of burden articulated in the Eighth

Circuit's *Lehman* test." Dkt. 48 at 7. But its September 10 opinion rejected Rabbi Shapiro's as-applied challenge on precisely that basis. Dkt. 35 at 42–43.

### 3. Plaintiffs Brought, and the District Court Decided, an As-Applied Challenge

The district court's September 10 opinion correctly recognized that, "[f]or purposes of their requests for preliminary injunctive relief, inasmuch as they seek relief only for themselves, [Plaintiffs] would only need to succeed on an as-applied challenge." Dkt. 35 at 15. "An as-applied challenge is one which depends on the identity or circumstances of the plaintiff." *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 204 (4th Cir. 2022). Plaintiffs sought to enjoin enforcement only "against Plaintiffs Silver Spring Jewish Center, Inc. and Rabbi J. Menashe Shapiro." Dkt. 5-5 at 1–2; *see* Dkt. 5-4 at 2. The court so understood at the hearing. Tr. 13:7–8 ("[I]n the SSJ[C] case, it appears to be limited to the parties … ."). Plaintiffs' motion also put the circumstances of their walk in play, Dkt. 5-1 at 9, 15–16; at the hearing, Plaintiffs explained that the challenge was as-applied to "their ability to walk to the synagogue while armed," Tr. 77:5–10; and they accepted the narrower relief the court proposed for that walk, Tr. 83:22–25, 102:15–103:10. And the court decided "Rabbi Shapiro's challenge, as applied, and limited to the places of public assembly along his walk to the synagogue." Dkt. 35 at 42.

On reconsideration, the court took a different view. Relying on *Doe v. Reed*, 561 U.S. 186 (2010), it reasoned that Plaintiffs had "sought far-reaching relief to enjoin completely the operation of Section 57-11(a)," so that their requested relief "reach[ed] beyond the[ir] particular circumstances," and the court had therefore properly "analyzed … not an as-applied challenge, but a facial challenge." Dkt. 48 at 9–10 (quoting *Reed*, 561 U.S. at 194). That reasoning misreads both the record and *Reed*.

*First*, Plaintiffs never sought to enjoin the operation of § 57-11(a) "completely"; they sought to enjoin its enforcement only "against Plaintiffs." Dkt. 5-5 at 1–2. Unlike the claim in *Reed*, which was "'facial' in that it [was] not limited to plaintiffs' particular case," 561 U.S. at 194, Plaintiffs' request reached beyond their circumstances in only one respect: it would have protected them within 100 yards of every place of public assembly, not only along their route to synagogue.

*Second*, even when a request reaches beyond a plaintiff's circumstances, *Reed* requires the plaintiff to satisfy the facial standard only "*to the extent of that reach*." *Id.* (emphasis added). A plaintiff who cannot justify the broader relief does not forfeit relief tailored to his own circumstances, which remains subject to the as-applied standard. After all, the facial/as-applied distinction "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint."

*Citizens United v. FEC*, 558 U.S. 310, 331 (2010). For the same reason, the court's statement that a facial challenger must disprove every justification the government might offer, Dkt. 48 at 11, has no bearing on the narrower relief. And even in a facial challenge, the government still must "demonstrate that [the law] is constitutional in some of its applications." *United States v. Rahimi*, 602 U.S. 680, 693 (2024).

The district court's own treatment of the places-of-worship ban confirms the point: although Plaintiffs' proposed order sought relief for any firearm "in a place of worship," Dkt. 5-5 at 2, the court barred enforcement only as to handguns, and only in "THEIR respective places of worship," Dkt. 36 at 2. It should have taken the same approach with the 100-yard rule by deciding whether Plaintiffs had justified relief for their walk to synagogue—the very question it posed at the hearing. Tr. 83:22–25.

The same reasoning reaches SSJC's members. Like Rabbi Shapiro, its Security Team members hold Maryland carry permits, Dkt. 5-3 ¶ 6, and are Orthodox Jews bound by the same obligation to walk to communal prayer, Dkt. 1, Compl. ¶ 55. The rule "makes it impossible for SSJC's members … to walk to the synagogue, as their beliefs require at particular times, while exercising their right to bear arms," *id.*—which necessarily means that their routes, like Rabbi Shapiro's,

pass within 100 yards of a place of public assembly. And the district court recognized SSJC's standing to assert its members' interests. Dkt. 35 at 13–14.

### B. The 100-Yard Rule Violates the Free Exercise Clause as Applied to Plaintiffs

Under the Free Exercise Clause, a law that burdens religious exercise must satisfy strict scrutiny unless it is both neutral toward religion and generally applicable. *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021). The 100-yard rule burdens Plaintiffs' religious exercise, is not generally applicable, and cannot satisfy strict scrutiny.

#### 1. The Rule Burdens Plaintiffs' Sincere Religious Practice

Jewish law requires the defense of oneself and fellow Jews. Dkt. 5-3 ¶ 7. This requirement includes, but is not limited to, providing protection during worship services at the synagogue. *Id.* Indeed, Rabbi Shapiro's declaration states that Jewish Law "requires [him] to carry a firearm for personal, family, and communal protection." Dkt. 5-2 ¶ 9; Dkt. 35 at 9. Additionally, Jewish law requires Rabbi Shapiro and other congregants to walk to synagogue on the Sabbath and other holidays. Dkt. 5-2 ¶ 11; Dkt. 35 at 9.

The 100-yard rule burdens Plaintiffs' religious beliefs on at least two fronts. First, it prevents Rabbi Shapiro and other members of the synagogue security team from providing security for the congregation during worship services. Although the district court's injunction allows congregants to have firearms *inside* the

synagogue, no member of the security team can walk to synagogue—or even approach the synagogue on foot—carrying their firearms without violating the 100-yard rule. Second, the rule directly prohibits congregants from providing for their own and their family's security while walking to synagogue. For both practices, the rule "pressure[s]" Plaintiffs "to change or modify [their] actions, which would otherwise violate [their] sincerely held religious beliefs," which "qualifies as a cognizable burden" under the Free Exercise Clause. *Polk v. Montgomery Cnty. Pub. Schs.*, 166 F.4th 400, 413 (4th Cir. 2026).

### 2. The Rule Is Not Generally Applicable

A law is not generally applicable if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 593 U.S. at 534. "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," and "[c]omparability is concerned with the risks various activities pose." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021).

The County's asserted interest here is preventing gun violence "in or near places of public assembly." Dkt. 35 at 37; Dkt. 45 at 21. The County permits multiple courses of conduct that undermine that interest far more than permitting congregants to walk to and from synagogue.

*First*, the County permits licensed carriers to carry handguns within 100 yards of any place of public assembly so long as they are in a motor vehicle. Montgomery Cnty., Md., Code § 57-11(b)(6)(B). The vehicle exception undermines the County's interest at least as much as permitting congregants to walk to synagogue while armed would. A person in a vehicle drives mere feet from the sidewalk and has the same opportunity to use a firearm that a pedestrian does. And because the exception does not require the vehicle to keep moving, a driver may idle or park beside a school or house of worship as long as he likes. The person in the vehicle thus poses exactly the same risk of gun violence as the congregant walking past on foot. "Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Tandon*, 593 U.S. at 63. The County has made no such showing.

*Second*, the County permits licensed carriers to walk armed near many other places where people gather for common purposes—fraternal lodges, stores, restaurants—none of which are a "place of public assembly." *See* Montgomery Cnty., Md., Code § 57-1. The district court found that a fraternal lodge, like a place of worship, is a "site[] for gathering for common purpose … and a place where the County may have an interest in preventing gun violence," and it held that the County's unequal treatment of such places rendered the places-of-worship ban not

generally applicable. Dkt. 35 at 51–53. The same reasoning applies here: allowing licensed carriers to walk armed past places where large groups gather undermines the County's interest in the same way as allowing synagogue members to walk past (often empty) schools or other houses of worship. The County argued below that lodges mattered only because their owners may decide whether to allow firearms on their premises, and that religious and secular pedestrians are treated alike. Dkt. 45 at 23. But owner autonomy has nothing to do with the public sidewalks outside a lodge, and "[i]t is no answer that a State treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue." *Tandon*, 593 U.S. at 62.

### 3. The Rule Fails Strict Scrutiny

Because the rule is not generally applicable, the County must show that it is "narrowly tailored to advance a compelling state interest." *Jesus Christ is the Answer Ministries v. Baltimore County*, 915 F.3d 256, 265 (4th Cir. 2019). The County cannot meet that standard. Even granting a "broadly formulated" interest in preventing gun violence, the County must show a compelling interest in denying "specific exemptions to particular religious claimants." *Fulton*, 593 U.S. at 541. The County cannot claim such an interest because it permits licensed carriers in cars near covered places, and on foot or in cars near materially identical uncovered places. "[A] law cannot be regarded as protecting an interest 'of the highest order'

… when it leaves appreciable damage to that supposedly vital interest unprohibited.” *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 547 (1993) (citation omitted).

The law is also not narrowly tailored to the County’s interest because “less restrictive alternatives” abound. *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 813 (2000). Maryland’s sensitive-places statute has no buffer zone around schools, parks, or places of worship. Md. Code Ann., Crim. Law § 4-111. Baltimore exempts permit holders from its buffer zones, Balt., Md., Code art. 19, § 59-5(b), (d), and Prince George’s County restricts only loaded firearms, Prince George’s Cnty., Md., Code § 14-140. Within Montgomery County, Gaithersburg and Takoma Park exempt permit holders from their firearms restrictions. Gaithersburg, Md., Code § 15-16; Takoma Park, Md., Code § 14.16.060(B)(6); Dkt. 33 at 2. And the federal Gun-Free School Zones Act exempts state-licensed carriers. 18 U.S.C. § 922(q)(2)(B)(ii). Any of these laws would permit Rabbi Shapiro and other congregants to transport their firearms to synagogue on foot, as required by their religious beliefs. When so many other jurisdictions take a less restrictive approach, the County “must, at a minimum, offer persuasive reasons why it believes that it must take a different course.” *Holt v. Hobbs*, 574 U.S. 352, 369 (2015). It has offered none.

## II. Plaintiffs Will Suffer Irreparable Harm Without an Injunction

Where plaintiffs have shown "a likely constitutional violation, the irreparable harm factor is satisfied." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (*en banc*). The harm here recurs at least once per week: each Sabbath and Jewish holiday, Plaintiffs must choose between their religious obligation to walk to communal prayer and their obligation—and right—to be armed.

## III. The Balance of Equities and the Public Interest Favor an Injunction

The balance of harms and the public interest favor an injunction. The government "is in no way harmed by issuance of a preliminary injunction which prevents [it] from enforcing restrictions likely to be found unconstitutional," while "the public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle*, 2 F.4th at 346 (quoting *Centro Tepeyac*, 722 F.3d at 191). And the relief requested here is narrow—it would protect only Rabbi Shapiro and SSJC's licensed members, and only while they walk between their homes and their synagogue—minimizing any harm to the County's interests.

Further, the County does "not oppose Plaintiffs' request for preliminary injunctive relief as to the Buffer Zone specifically surrounding SSJC." Dkt. 45 at 14 n.5. The district court denied that unopposed relief without addressing the concession. *See* Dkt. 48. At a minimum, therefore, the Court should enjoin

enforcement of § 57-11(a)(1) against Rabbi Shapiro and SSJC's members within 100 yards of SSJC—including within any overlapping zone created by another place of public assembly.

## CONCLUSION

The Court should enjoin Defendant, pending appeal, from enforcing Montgomery County Code § 57-11(a)(1) against Rabbi J. Menashe Shapiro and against members of Silver Spring Jewish Center, Inc. who hold a permit to wear, carry, or transport a handgun issued under Maryland law, to the extent that provision prohibits them from possessing or transporting a handgun while walking between their respective homes and their synagogue.

Dated: November 10, 2026

Respectfully submitted,

/s/ Andrew J. Morris
Jacob Huebert
Andrew J. Morris
Markham S. Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
jacob.huebert@ncla.legal
andrew.morris@ncla.legal

Eric S. Baxter
Daniel L. Chen
Benjamin A. Fleshman
THE BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave., NW, Suite 400
Washington, DC 20006

*Counsel for Plaintiff-Appellant*
*Silver Spring Jewish Center, Inc.*

/s/ J. Menashe Shapiro
Rabbi J. Menashe Shapiro
805 Whittington Terrace
Silver Spring, MD 20901
(216) 645-2094
RabbiMenasheShapiro@gmail.com

*Pro Se Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 5,200 words.

2. This motion complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Andrew J. Morris
Andrew J. Morris

## CERTIFICATE OF SERVICE

I certify that on November 10, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system, which will serve all registered CM/ECF users.

/s/ Andrew J. Morris
Andrew J. Morris

## INDEX OF ATTACHMENTS

(Fed. R. App. P. 8(a)(2)(B); 4th Cir. R. 8)

1. Order Denying Motion to Amend Judgment or, in the Alternative, for Injunction Pending Appeal (Oct. 27, 2026) (Dkt. 49)
2. Memorandum Opinion (Oct. 27, 2026) (Dkt. 48)
3. Order Granting in Part Motion for Temporary Restraining Order or Preliminary Injunction (Sept. 10, 2026) (Dkt. 36)
4. Memorandum Opinion (Sept. 10, 2026) (Dkt. 35)
5. Plaintiffs' Motion to Amend Judgment or, in the Alternative, for Injunction Pending Appeal, with Memorandum and Proposed Order (Dkt. 39, 39-1, 39-2)
6. Defendants' Opposition and Memorandum, with Exhibits 1, 3, 5, 12, 13, and 14 (Dkt. 46, 45, 45-1, 45-3, 45-4, 45-5, 45-6, 45-12, 45-13, 45-14)
7. Plaintiffs' Reply, with Exhibit 1 (Dkt. 47, 47-1)
8. Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction, with Memorandum, Declarations, and Proposed Orders (Dkt. 5, 5-1 to 5-5)
9. Defendants' Opposition to Motion for Temporary Restraining Order or Preliminary Injunction, with Memorandum (Dkt. 26, 26-1)
10. Plaintiffs' Reply in Support of Motion for Temporary Restraining Order or Preliminary Injunction (Dkt. 29)
11. Defendants' Line Responding to Court Inquiry (Sept. 8, 2026) (Dkt. 32)
12. Plaintiffs' Letter (Sept. 8, 2026) (Dkt. 33)
13. Transcript of Preliminary Injunction Hearing (Sept. 3, 2026) (excerpts) (Dkt. 38)
14. Complaint (Dkt. 1)