**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| Silver Spring Jewish Center, Inc., et al.<br><br>*Plaintiffs*,<br><br>v.<br><br>Montgomery County, Maryland, *et al.*,<br><br>*Defendants.* | Civil Action No. 8:26-cv-02963-DKC |

**PLAINTIFFS' MOTION TO AMEND JUDGMENT OR, IN THE ALTERNATIVE, FOR INJUNCTION PENDING APPEAL**

Pursuant to Federal Rules of Civil Procedure 54(b) and 59(e),[1] Plaintiffs Silver Spring Jewish Center, Inc. and Rabbi J. Menashe Shapiro hereby move this Court to reconsider its partial denial of their Motion for Temporary Restraining Order or Preliminary Injunction (Dkt. 35, 36), and to enter a preliminary injunction prohibiting Defendants[2] from enforcing Montgomery County's ban on firearms within 100 yards of any place of public assembly, Montgomery County Code § 57-11(a)(1), against the members of Plaintiff Silver Spring Jewish Center, Inc. ("SSJC") and

[1] The Court's authority to reconsider and amend an interlocutory decision is pursuant to Fed. R. Civ. P. 54(b). However, the Fourth Circuit has explained that for the purpose of appellate jurisdiction and "tolling under Appellate Rule 4(a)(4)(A)(iv)," this motion is the "functional equivalent of a Rule 59(e) motion." *Gelin v. Balt. Cnty.*, 122 F.4th 531, 537 (4th Cir. 2024) (cleaned up).

[2] Plaintiffs give notice that Defendant Marc R. Yamada, who was sued in his official capacity as Chief of Police of Montgomery County, has resigned from his position. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Police Chief Darren Francke has automatically been substituted as a Defendant

Plaintiff Rabbi J. Menashe Shapiro as they walk between the synagogue and their homes. In the alternative, Plaintiffs move, pursuant to Federal Rule of Civil Procedure 62(c), for a preliminary injunction pending appeal providing the same relief.

As explained in the accompanying memorandum, Plaintiffs are likely to succeed on the merits of their Second Amendment and Free Exercise Clause challenges to the 100-yard rule as applied to their walk to and from synagogue. Plaintiffs will continue to suffer irreparable harm absent relief, and the balance of equities and the public interest favor an injunction, for the same reasons that supported the Court's earlier grant of preliminary relief as to Defendants' ban on firearms in places of worship. This relief remains urgent: the Jewish holidays of Sukkot and Shemini Atzeret/Simchat Torah begin September 25 and October 2, 2026, respectively, and both fall within the period surrounding the anniversary of the October 7, 2023 attacks.

Dated: September 24, 2026

Eric S. Baxter (Bar No. 15640)
Daniel L. Chen (*pro hac vice* pending)
Benjamin A. Fleshman (admission pending)
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave., NW
Suite 400
Washington, DC 20006

/s/ Jacob Huebert
Andrew J. Morris (Bar No. 22945)
Jacob Huebert (pro hac vice)
New Civil Liberties Alliance
4250 N. Fairfax Drive
Suite 300
Arlington, VA 22204
(202) 869-5210
andrew.morris@ncla.legal
jacob.huebert@ncla.legal

*Attorneys for Plaintiff Silver Spring Jewish Center*

/*s*/ J. Menashe Shapiro
Rabbi J. Menashe Shapiro,
805 Whittington Terrace
Silver Spring, Maryland 20901
T: (216) 645-2094
F: (216) 831-3736
RabbiMenasheShapiro@gmail.com

*Pro Se Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| Silver Spring Jewish Center, Inc., *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Civil Action No. 8:26-cv-02963-DKC |
| | ) | |
| v. | ) | |
| | ) | |
| Montgomery County, Maryland, | ) | |
| *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO AMEND JUDGMENT, OR IN THE ALTERNATIVE,
FOR AN INJUNCTION PENDING APPEAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

FACTS ..... 2

STANDARDS OF REVIEW ..... 3

I. PRELIMINARY INJUNCTION ..... 3

II. RECONSIDERATION OF AN INTERLOCUTORY ORDER ..... 3

III. INJUNCTION PENDING APPEAL ..... 4

ARGUMENT ..... 5

I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR AS-APPLIED CHALLENGES TO THE 100-YARD RULE ..... 6

A. The 100-Yard Rule Violates the Second Amendment as Applied to Walking to Synagogue ..... 6

1. The Court Applied an Incorrect Standard to Plaintiffs' As-Applied Second Amendment Challenge to the 100-Yard-Rule ..... 6

2. Defendants Cannot Carry Their Burden with Respect to the 100-Yard-Rule's Application ..... 9

a. Places of Worship ..... 9

b. Parks ..... 10

c. Schools ..... 12

3. Both Rabbi Shapiro and SSJC's Members Properly Raised This As-Applied Challenge, and Both Are Entitled to Relief. ..... 15

B. The 100-Yard Rule Violates Plaintiffs' Free Exercise Rights....................... 16

1. The 100-Yard Rule Is Not Generally Applicable...................................... 18

2. The 100-Yard Rule Fails Strict Scrutiny................................................. 20

II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION AGAINST THE 100-YARD RULE ........................................................................ 23

III. THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR A PRELIMINARY INJUNCTION ........................................................................................... 23

CONCLUSION........................................................................................... 24

## TABLE OF AUTHORITIES

### Cases

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
326 F.3d 505 (4th Cir. 2003) ........ 3

*Cahaly v. Larosa*,
796 F.3d 399 (4th Cir. 2015) ........ 21

*Carlson v. Bos. Sci. Corp.*,
856 F.3d 320 (4th Cir. 2017) ........ 4

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ........ 20

*Doe ex rel. Doe v. South Carolina*,
No. 25-1787, 2025 WL 2375386
(4th Cir. Aug. 15, 2025) ........ 4

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) ........ 17, 19, 21

*Gelin v. Balt. Cnty.*,
122 F.4th 531 (4th Cir. 2024) ........ 1

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ........ 4

*Holt v. Hobbs*,
574 U.S. 352 (2015) ........ 23

*In re Murphy-Brown, LLC*,
907 F.3d 788 (4th Cir. 2018) ........ 21

*Jesus Christ Is the Answer Ministries, Inc. v. Baltimore County*,
915 F.3d 256 (4th Cir. 2019) ........ 21

*Kipke v. Moore*,
165 F.4th 194 (2026) ........................................................................ 14, 15

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*,
2 F.4th 330 (4th Cir. 2021).............................................................. 3, 23, 24

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*,
674 F.3d 369 (4th Cir. 2012) ............................................................................ 4

*Md. Shall Issue, Inc. v. Montgomery County*,
680 F. Supp. 3d 567 (D. Md. 2023) ................................................. 9, 10, 11

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ............................................................................... 6, 8, 10

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................................................ 3

*Perry v. Marteney*,
172 F.4th 315 (4th Cir. 2026)......................................................................... 18

*Polk v. Montgomery Cnty. Pub. Schs.*,
166 F.4th 400 (4th Cir. 2026)......................................................................... 18

*Redeemed Christian Church of God (Victory Temple) Bowie v. Prince George's County*,
17 F.4th 497 (4th Cir. 2021)........................................................................... 21

*Tandon v. Newsom*,
593 U.S. 61 (2021) ...................................................................................... 18, 22

*United States v. Adams*,
914 F.3d 602 (8th Cir. 2019) ............................................................................ 7

*United States v. Allam*,
140 F.4th 289 (5th Cir. 2025)..................................................................... 13, 14

*United States v. Hemani*,
608 U.S. 772 (2026) .......... 8

*United States v. Lehman*,
8 F.4th 754 (8th Cir. 2021) .......... 7, 8

*United States v. Perez*,
145 F.4th 800 (8th Cir. 2025) .......... 8

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000) .......... 22

*United States v. Rahimi*,
602 U.S. 680 (2024) .......... 13

*Wolford v. Lopez*,
146 S. Ct. 2032 (2026) .......... 6

**Statutes**

18 U.S.C. § 922(q)(2)(B)(ii) .......... 12, 22

Balt., Md., Code art. 19. § 59-5(b) .......... 22

Balt., Md., Code art. 19. § 59-5(d) .......... 22

Md. Code Ann., Pub. Safety § 5-306 .......... 12

Md. Code Ann., Crim. Law § 4-111 .......... 22

Montgomery Cnty., Md., Code § 57-1 .......... 17, 20

Montgomery Cnty., Md., Code § 57-11 .......... 17, 20

Prince George Cnty., Md., Code § 14-140 .......... 22

**Rules**

Fed. R. App. P. 8(a)(1) ........ 4

Fed. R. Civ. P. 54(b) ........ 1, 3

Fed. R. Civ. P. 59(e) ........ 1, 4

Fed. R. Civ. P. 62(d) ........ 4

Plaintiffs Silver Spring Jewish Center (SSJC) and Rabbi J. Menashe Shapiro respectfully ask this Court, pursuant to Federal Rules of Civil Procedure 54(b) and 59(e),[1] to reconsider its denial of their motion for a preliminary injunction with respect to Defendant Montgomery County's ban on firearms within 100 yards of "a place of public assembly." In the alternative, Plaintiffs ask the Court to enjoin the 100-yard rule pending their Fourth Circuit appeal. Although the Court's existing order protects the right of Rabbi Shapiro and other SSJC members to carry firearms while at synagogue, the 100-yard rule prevents them from exercising that right while walking to the synagogue on the Sabbath and Jewish holidays.

Reconsideration is warranted based on clear legal error. With respect to Montgomery County's ban on carry within the synagogue, the Court properly concluded that Defendants failed to identify historical analogues justifying such a restriction. The same test should have applied with respect to the 100-yard rule. Instead, the Court shifted the burden to Plaintiffs under a pre-*Bruen* standard that has since been rejected by the circuit that created it. Under a *Bruen* analysis, the burden is Defendants', and they cannot meet that burden.

Plaintiffs also submit that the Court, in determining the ban was generally applicable, failed to consider relevant comparators when assessing Plaintiffs' Free Exercise Clause claim. For example, the Court did not consider whether the

---

[1] The Court's authority to reconsider and amend an interlocutory decision is pursuant to Fed. R. Civ. P. 54(b). However, the Fourth Circuit has explained that for the purpose of appellate jurisdiction and "tolling under Appellate Rule 4(a)(4)(A)(iv)," this motion is the "functional equivalent of a Rule 59(e) motion." *Gelin v. Balt. Cnty.*, 122 F.4th 531, 537 (4th Cir. 2024).

exemption for transporting firearms in a vehicle rendered the 100-yard rule not generally applicable. And, although the Court held that the ban on firearms in places of worship was not generally applicable because of exemptions for carrying firearms in other comparable spaces, it did not apply that same analysis to the 100-yard rule. Again, applying the same analysis that the Court used for the places-of-worship ban to the 100-yard rule should have led to the same result under the Free Exercise Clause.

Plaintiffs therefore respectfully request that this Court reconsider its prior denial of an injunction regarding the 100-yard rule, or, in the alternative, that the Court enter an injunction pending appeal of this Court's ruling.

## FACTS

Plaintiffs incorporate by reference the facts presented in the Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction. Dkt. 5-1, Mem. in Supp. of Pls.' Mot. for Prelim. Inj. 1–5. To those facts, they add the following procedural history.

On September 10, 2026, this Court issued a Memorandum Opinion ("Mem. Op."), Dkt. 35, and an Order, Dkt. 36, partially granting Plaintiffs' motion. The Court's opinion concluded that Plaintiffs are likely to succeed in their as-applied Second Amendment and First Amendment Free Exercise Clause challenges to Montgomery County's ban on firearms in places of worship, Mem. Op. at 22–38, but not in their challenges to the County's ban on firearms within 100 yards of places of public assembly, *id.* at 38–43, 55–56. Accordingly, the Court preliminarily enjoined Defendants "from enforcing Montgomery County Code §§ 57-1 and 57-11(a)(1)

against Plaintiffs Silver Spring Jewish Center, Inc. and Rabbi J. Menashe Shapiro, to the extent that those provisions prohibit Plaintiffs from selling, transferring, possessing, or transporting a handgun in THEIR respective places of worship." Order at 1–2.

## STANDARDS OF REVIEW

### I. PRELIMINARY INJUNCTION

A preliminary injunction is warranted where plaintiffs "establish that 1) they are likely to succeed on the merits; 2) they are likely to suffer irreparable harm absent preliminary relief; 3) the balance of equities favors relief; and 4) the relief is in the public interest." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021). Where, as here, the opposing party is a government entity, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### II. RECONSIDERATION OF AN INTERLOCUTORY ORDER

Under Federal Rule of Civil Procedure 54(b), "a district court retains the power to reconsider and modify its interlocutory judgments ... at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). That authority is "committed to the discretion of the district court," *id.* at 515, and "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," *id.* at 514. Revision of an interlocutory order is appropriate where there has been "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (cleaned up) (quoting *Am. Canoe*

*Ass'n*, 326 F.3d at 515); *accord Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*, 674 F.3d 369, 378 (4th Cir. 2012) (Rule 59(e) motion granted "in three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." (citing *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007))). Local Rule 105.10 requires a party to file any motion to reconsider an order no later than fourteen days after entry of the order.

## III. Injunction Pending Appeal

Federal Rule of Civil Procedure 62(d) authorizes a district court, "[w]hile an appeal is pending from an interlocutory order … that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction," to "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Rule 8(a)(1) of the Federal Rules of Appellate Procedure requires that a party "ordinarily move first in the district court" for such relief before seeking it from the court of appeals. The factors governing an injunction pending appeal are "generally the same" as those governing a preliminary injunction. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Doe ex rel. Doe v. South Carolina*, No. 25-1787, 2025 WL 2375386, at *1, *8 (4th Cir. Aug. 15, 2025). The burden will be met when there is a credible allegation of enforcement of a state or local law that, absent an injunction, infringes on constitutional rights. *See Doe ex rel. Doe*, 2025 WL 2375386, at *8.

## ARGUMENT

The Court's partial denial of Plaintiffs' motion for preliminary injunction warrants reconsideration, or an injunction pending appeal, because the Court's decision contained clear errors that will cause manifest injustice.

First, in analyzing Plaintiffs' as-applied Second Amendment challenge to the ban on firearms within 100 yards of places of public assembly, the Court incorrectly applied a pre-*Bruen* standard that was untethered from history and tradition and placed the burden on the individuals raising the challenge instead of placing it on the government as *Bruen* requires. Second, as a result of that error, the Court incorrectly concluded that Plaintiffs had not shown that they were likely to succeed on the merits of that as-applied claim. Third, the Court incorrectly analyzed the merits of Plaintiffs' as-applied Free Exercise Clause challenge to the 100-yard rule.

As a result of these errors, Rabbi Shapiro and SSJC's members face irreparable harm, including both the harm inherent in any deprivation of constitutional rights or religious exercise and the threat to their safety resulting from their inability to carry a firearm while they walk to synagogue. Moreover, this matter remains particularly urgent as two Jewish holidays are imminently approaching: Sukkot (September 25, 2026 through October 2, 2026) and Shemini Atzeret/Simchat Torah (October 2, 2026 through October 4, 2026). Additionally, both the secular anniversary of October 7th and the Jewish calendar-anniversary (Shemini Atzeret) are less than a month away.

## I. Plaintiffs Are Likely to Succeed on the Merits of Their As-Applied Challenges to the 100-Yard Rule

### A. The 100-Yard Rule Violates the Second Amendment as Applied to Walking to Synagogue

The denial of a preliminary injunction with respect to the 100-yard rule is clearly erroneous for two reasons.[2] First, the Court applied an incorrect legal standard. Second, under the correct standard, Plaintiffs are likely to succeed on the merits because Defendants cannot show a historical tradition of restricting permit holders from carrying a firearm near any of the relevant places of public assembly.

#### 1. The Court Applied an Incorrect Standard to Plaintiffs' Second Amendment Challenge to the 100-Yard-Rule.

Under *Bruen* and *Wolford*, once a plaintiff's conduct falls within the Second Amendment's plain text, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022); *accord Wolford v. Lopez*, 146 S. Ct. 2032, 2044 (2026). That burden allocation does not shift depending on whether a challenge is facial or as-applied, or on whether the plaintiff seeks preliminary or permanent relief. A preliminary-injunction movant's burden is to show a likelihood that the government will fail to carry its own, unwavering

---

[2] Plaintiffs' Second Amendment challenge to the 100-yard rule is limited here to an as-applied challenge as to the places Rabbi Shapiro and SSJC members must pass while walking to synagogue. *See* Dkt. 1, Compl. ¶¶ 43, 76. Plaintiffs reserve the right to pursue their facial challenge at the merits stage. Below, Plaintiffs discuss the law primarily as applied to Rabbi Shapiro, but the analysis applies to SSJC's affected members as well.

burden—not affirmatively to disprove every justification the government might conceivably offer.

The Court said as much earlier in its opinion: "SSJC and Rabbi Shapiro must show that (1) the challenged sections of the Code clash with the plain text of the Second Amendment and fall within it; and (2) that Defendants cannot carry their burden of justifying the challenged sections." Mem. Op. at 21 (citing *Wolford*, 146 S. Ct. at 2044; *Bruen*, 597 U.S. at 24). That is exactly the methodology the Court applied to the places-of-worship claim: it examined each of Defendants' fifteen proffered historical analogues in turn and found them insufficient. *Id.* at 22–38.

The Court did not apply that standard to the 100-yard rule. Instead, it cited language from two pre-*Bruen*, out-of-circuit felon-in-possession cases—*United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019), and *United States v. Lehman*, 8 F.4th 754, 757 (8th Cir. 2021)—for the proposition that "to succeed on an as-applied challenge, [the party raising the Second Amendment challenge] must establish (1) that the Second Amendment protects his particular conduct, and (2) that his particular prohibitor is insufficient to justify the challenged regulation of Second Amendment rights." Mem. Op. at 15–16 (quoting *Lehman*, 8 F.4th at 757). Applying that formulation to Rabbi Shapiro, the Court concluded that his as-applied challenge failed because he "is like any other licensed gun carrier" and had not "identif[ied] the particular reason he is prohibited that he claims is insufficient." *Id.* at 42–43.

The Court clearly erred in utilizing that standard. Both *Adams* and *Lehman* predate *Bruen* and thus employed a pre-*Bruen* framework that required a party

raising an as-applied Second Amendment challenge to "establish … that his [particular prohibitor] is insufficient to justify the challenged regulation of Second Amendment rights." *Lehman*, 8 F.4th at 757 (quoting *Adams*, 914 F.3d at 605). That is contrary to the analysis that *Bruen* would later prescribe, which explicitly eliminated means-end analysis of Second Amendment claims and instead always places the burden on the *government* to justify, using historical analogues, a challenged regulation of Second Amendment rights. *Bruen*, 597 U.S. at 24; *see also United States v. Hemani*, 608 U.S. 772, 780 (2026) (requiring the government to meet its burden under *Bruen* in an as-applied Second Amendment challenge). Indeed, *Adams* and *Lehman* are no longer good law on that point *even in the Eighth Circuit*. Post-*Bruen* the Eighth Circuit held that in as-applied challenges, the "government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition." *United States v. Perez*, 145 F.4th 800, 804 (8th Cir. 2025) (quoting *Bruen*, 597 U.S. at 24).

Applying the correct standard—the one the Court applied to the places-of-worship ban—the question is not whether Rabbi Shapiro affirmatively disproved every conceivable justification for the buffer zone, but whether Defendants are likely to carry their burden to show that restricting a licensed, background-checked carrier within 100 yards of the specific places along his route is consistent with the Nation's historical tradition of firearm regulation. As shown below, the record here shows that Defendants are unlikely to meet that burden because they have made no serious attempt to do so.

### 2. Defendants Cannot Carry Their Burden with Respect to the 100-Yard-Rule's Application

Defendants have offered, at most, one piece of authority to justify the 100-yard rule as a whole: "this Court's determination in the *MSI* Litigation that the very sensitive places at issue here pass Constitutional muster—at least at the preliminary injunction phase."[3] Dkt. 26-1, Opp. to Plfs.' Mot. 22 (referencing *Md. Shall Issue, Inc. v. Montgomery Cnty.*, 680 F. Supp. 3d 567 (D. Md. 2023)); *id.* at 25 (citing *Md. Shall Issue, Inc.*, 680 F. Supp. 3d at 590). But that authority alone cannot carry Defendants' burden for any of the three relevant categories of places.

#### a. *Places of Worship*

*Maryland Shall Issue* supplies no historical support for a 100-yard buffer around places of worship. That opinion addresses "Places of Worship" and "100-Yard Buffer Zones" in separate sections, and the 100-yard-rule section does not cite a single Founding-era statute, ordinance, or decision involving a distance restriction around any place of worship. 680 F. Supp. 3d at 589–90. The only buffer-zone analogues that the opinion identified were restrictions around polling places (Maryland, 1874 and 1886; Louisiana, 1870), a two-mile restriction on firearm possession by students near schools (Mississippi, 1892), and five municipal ordinances ranging in time from 1870 to 1903 restricting firearms within 50 to 100 yards of public parks. *Id.*

---

[3] Defendants do not even identify the historical analogues relied on in *Maryland Shall Issue*. Dkt. 29, Plfs.' Reply in Supp. of Mot. for Prelim. Inj. 9. Nonetheless, Plaintiffs here show that the analogues cited in the *Maryland Shall Issue* opinion fail to justify the 100-yard rule.

Moreover, this Court has already held, in disagreement with *Maryland Shall Issue*, that the underlying ban on carrying a firearm *inside* a place of worship likely fails *Bruen* step two. Mem. Op. at 22–38. Defendants offered at least some (inadequate) analogues to attempt to defend that ban; for the ban within 100 yards of those same places of worship, they have offered nothing.

**b. *Parks***

The park-buffer analogues cited in *Maryland Shall Issue* consist of five municipal ordinances: Philadelphia (1870, 50 yards), St. Paul (1888, 50 yards), Pittsburgh (1893, 100 yards), Reading (1897, 50 yards), and Trenton (1903, 50 yards). *Md. Shall Issue*, 680 F. Supp. 3d at 589. Under the methodology prescribed by *Wolford*—the same methodology the Court applied to reject Defendants' putative analogues for the places-of-worship ban—these cannot suffice to meet Defendants' burden.

*Number of jurisdictions*. Three of the five ordinances come from a single state (Pennsylvania: Philadelphia, Pittsburgh, Reading), leaving only three states represented in total (Pennsylvania, Minnesota, New Jersey)—fewer sovereign jurisdictions than the four states and two territories this Court already found insufficient for the worship ban. Mem. Op. at 23–25. And every one of the five is a municipal ordinance, not a state statute—a still more localized form of enactment than the state laws this Court found insufficient. *Cf. Bruen*, 597 U.S. at 67 ("localized restrictions" could not overcome the weight of a contrary national tradition).

*Timing*. All five ordinances date from 1870 to 1903—after ratification of the Fourteenth Amendment. The ordinances thus have the same temporal-remoteness

problem that made Defendants' analogues for the places-of-worship ban insufficient. *See* Mem. Op. at 27–29.

*Acceptance*. Defendants offered three judicial decisions in an attempt to show express acceptance of the worship analogues, and this Court found none of them persuasive. *See id.* at 32–36. For the park analogues, *Maryland Shall Issue* cites *no* judicial decision upholding any of the five ordinances.

*Methodology*. The *Maryland Shall Issue* park analysis rests on the same premise that this Court has already rejected: that Reconstruction-era sources are "equally if not more probative" of the Second Amendment's scope than Founding-era sources, a position drawn from the Eleventh Circuit's since-vacated panel decision in *National Rifle Ass'n v. Bondi*, 61 F.4th 1317 (11th Cir. 2023), *reh'g en banc granted, opinion vacated*, 72 F.4th 1346 (11th Cir. 2023). *Md. Shall Issue*, 680 F. Supp. 3d at 582–83. This Court has already recognized that the *en banc* Eleventh Circuit repudiated that reasoning and restored the primacy of Founding-era sources. Mem. Op. at 26–27 (discussing *Nat'l Rifle Ass'n v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (*en banc*)).

Finally, every one of these ordinances was an absolute prohibition enacted at a time when no jurisdiction had any mechanism—state permitting or otherwise—to distinguish a background-checked carrier from anyone else. That means these ordinances cannot speak to whether the "why" of the restriction—protecting public safety by disarming an undifferentiated public—extends to a carrier the State of Maryland has already screened and licensed.

### c. *Schools*

This Court cited *United States v. Taras*, No. 25-cr-00262-DAD, 2026 WL 2364515 (E.D. Cal. Aug. 14, 2026), for the proposition that "courts across the country have found that there is a history and tradition of placing restrictions on firearm possession in the area surrounding schools." Mem. Op. at 41 (quoting *Taras*, 2026 WL 2364515, at *6). But *Taras*—and the authorities it collects—cannot justify applying that restriction to Rabbi Shapiro.

**i.** The federal statute that *Taras* upheld—the Gun-Free School Zones Act—contains a critical exception that Montgomery County's 100-yard rule lacks: it does not apply to a person "licensed to [possess a firearm] by the State in which the school zone is located" if the State's licensing process requires law enforcement to "verify that the individual is qualified under law to receive the license." 18 U.S.C. § 922(q)(2)(B)(ii). Rabbi Shapiro holds just such a license: a Maryland Wear and Carry Permit issued only after a background investigation, including Livescan fingerprints submitted to state CJIS and the FBI by the Maryland State Police's Administrative Investigation Unit. Md. Code Ann., Pub. Safety § 5-306; Dkt. 5-2, Shapiro Decl. ¶ 10. Montgomery County's ordinance draws no such distinction: it prohibits Rabbi Shapiro, and every other Permit holder, from doing what the federal law allows them to do. The federal statute is therefore not relevantly similar to Montgomery County's law—to the contrary, it reflects a legislative judgment that a school buffer zone need not, and should not, reach people like Rabbi Shapiro.

**ii.** *United States v. Allam*, 140 F.4th 289 (5th Cir. 2025), on which *Taras* relied, noted that the Gun-Free School Zone Act's exemption for license holders is one reason why the federal statute "is not a categorical prohibition" on firearm possession within 1,000 feet of a school—and that this "materially ameliorate[s]" the law's restriction of Second Amendment rights. *Id.* at 293 n.4, 297.

In rejecting an as-applied Second Amendment challenge to the Act, *Allam* grounded its historical analysis in King Henry VIII's version of the Statute of Northampton—which restricted arms within two miles of a court—and the "going-armed" laws that the Supreme Court discussed in *Rahimi*. As the panel recognized, both sources prohibited carrying only "for the purpose of terrorizing other people," *not* carrying for legitimate self-defense. *Id.* at 296–97 (quoting David B. Kopel & Joseph Greenlee, *The 'Sensitive Places' Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 205, 227 (2019)); *United States v. Rahimi*, 602 U.S. 680, 697–98 (2024) (going-armed laws restricted only carrying intended to menace or terrify).

That is why Allam's as-applied challenge failed. Unlike Rabbi Shapiro, Allam had no state license to carry a firearm, and his conduct went far beyond mere possession: he "camped out only 40 feet from school grounds" and behaved erratically and menacingly enough that the school changed "students' routines and traffic patterns" in response. *Allam*, 140 F.4th at 299. His conduct was thus similar to the conduct prohibited by the Statute of Northampton and historical going-armed laws. *Id.* And the Fifth Circuit had no occasion to decide, and did not decide, "how far a buffer zone

may stretch before it runs afoul of the Second Amendment" beyond those facts—as the "buffer zone needed to do very little work [in that case], if any." *Id.*

Rabbi Shapiro's proposed conduct is nothing like the *Allam* defendant's conduct that lacked Second Amendment protection: he does not seek to "camp out" anywhere and does not seek to engage in conduct that would menace or terrorize anyone—he just seeks to carry a firearm for self-defense while walking to synagogue, as Maryland law otherwise allows him to do as a permit holder. Thus, the historical tradition that justified restricting the defendant in *Allam* lacks relevance here.

**iii.** Two other district court decisions on which *Taras* relied—*United States v. Williams*, No. 25-cr-00015-H-BMM, 2025 WL 3610039 (D. Mont. Dec. 12, 2025), and *United States v. Walter*, No. 3:20-cr-0039, 2023 WL 3020321 (D.V.I. Apr. 20, 2023)—are similarly inapposite. Both involved as-applied challenges to the Gun-Free School Zones Act's 1000-foot rule—which, again, does not apply to individuals who have a state license like Maryland's Wear and Carry Permit. Thus, neither case considered, or bears upon, whether such a restriction would be constitutional as applied to someone with such a license.

**iv.** Finally, *Kipke v. Moore*, 165 F.4th 194, 212 n.3 (4th Cir. 2026) does not provide a basis for rejecting Plaintiffs' challenge to the 100-yard rule. There, the Fourth Circuit explained that "school grounds are analogous to school buildings" and thus found firearms restrictions on such grounds constitutionally permissible. *Id.* at 212. But Plaintiffs do not challenge the County's ban with respect to school grounds;

they challenge the ban with respect to the 100 yards *beyond* school grounds. *Kipke* did not address that issue or suggest that such a ban would be permissible.

### 3. Both Rabbi Shapiro and SSJC's Members Properly Raised This As-Applied Challenge, and Both Are Entitled to Relief

Rabbi Shapiro properly raised this as-applied challenge from the outset. The Complaint pleads the specific, individualized facts on which it rests: "The only path between his home and his synagogue requires him to walk within 100 yards of two public schools, two private schools, two parks, and three other houses of worship." Compl. ¶ 41. It alleges that "[u]nder the Ban, he may not carry a firearm as he passes by those locations—which means he cannot carry a firearm while walking to his synagogue," *id.* ¶ 42, and that "[b]ut for the Ban," he would do so, *id.* ¶ 43. The Second Amendment count treats the 100-yard rule as an independent theory requiring its own historical justification, alleging that Defendants cannot show a historical tradition justifying "either" the places-of-worship ban "or" the 100-yard rule. *Id.* ¶ 74. It also alleges that, "by prohibiting Plaintiff Shapiro and other individuals from carrying a firearm … within 100 yards of any place of public assembly, the Ban violates the Second and Fourteenth Amendments[.]" *Id.* ¶ 76. The Prayer for Relief then requests a declaration that the 100-yard rule is unconstitutional "on its face and as applied to Plaintiffs." *Id.*, Prayer for Relief ¶ C.

The same theory reaches the members of SSJC's Security Team, who may now possess a firearm at SSJC under the Court's preliminary injunction.[4] Like Rabbi

---

[4] Given that the Court recognized SSJC's standing to bring claims on behalf of its members, Mem. Op. at 13–14, Plaintiffs understand the Court's order enjoining

Shapiro, the members of SSJC's Security Team who bear arms at the synagogue have a Wear and Carry Permit issued by the State of Maryland, Dkt. 5-3, Greiniman Decl. ¶ 6, and are Orthodox Jews bound by the same *halachic* obligation to attend communal prayer at the synagogue, Compl. ¶ 55. The Complaint's buffer-zone allegation is not limited to Rabbi Shapiro by name—it alleges a violation as to "Plaintiff Shapiro *and other individuals*." *Id.* ¶ 76 (emphasis added). And the Free Exercise count, incorporated into the Second Amendment count by Paragraph 71, alleges that the 100-yard rule "makes it impossible for SSJC's members … to walk to the synagogue … while exercising their right to bear arms." *Id.* ¶ 55. That allegation necessarily means that SSJC members' walking routes, like Rabbi Shapiro's, pass within 100 yards of a place of public assembly—the rule could not otherwise burden their walk at all. The same reasoning that warrants as-applied relief for Rabbi Shapiro thus warrants relief to SSJC's affected members, at least to the extent that they must walk past the same types of places of public assembly en route to the synagogue.

## B. The 100-Yard Rule Violates Plaintiffs' Free Exercise Rights

Plaintiffs are likely to succeed on their claim that the 100-yard rule violates the Free Exercise Clause. When a law burdens religious exercise, it must satisfy strict

---

enforcement of the places-of-worship ban "against Plaintiffs Silver Spring Jewish Center, Inc. and Rabbi J. Menashe Shapiro," Order at 1, as enjoining enforcement against SSJC's members—not just against SSJC as an entity. The Court's reasoning on the merits would warrant relief for both the organization and its members, and meaningful relief for SSJC requires relief for the members who would bear arms there.

scrutiny unless it is both neutral toward religion and generally applicable. *See Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021).

The 100-yard rule burdens Plaintiffs' sincere religious beliefs. This Court rightly recognized that the places-of-worship ban likely burdens Plaintiffs' religious practices by preventing them from fulfilling their *halachic* obligation to defend themselves and their fellow Jews through reliance on volunteer members of the community. Mem. Op. at 45–48. But this *halachic* obligation does not begin and end at the doors to their synagogue, as it includes protecting their family members while walking to and from their synagogue on the Sabbath. Shapiro Decl. ¶¶ 9, 11. Not only that, notwithstanding this Court's order, the 100-yard rule still makes it impossible for Rabbi Shapiro or other members of the congregation to possess firearms in their synagogue for Sabbath and holiday services. Their sincere religious beliefs require them to walk to synagogue, and there are no routes that Rabbi Shapiro, for example, can take to reach the synagogue that do not also pass within 100 yards of multiple schools, parks, or other places of worship in the synagogue's vicinity. *See id.* ¶¶ 10–11. Indeed, the law creates a 100-yard zone around the synagogue *itself* as a place of worship, *see* Montgomery Cnty., Md., Code §§ 57-1, 57-11, meaning no member can walk into the synagogue, regardless of this Court's order ensuring the right to carry within the synagogue.

Thus, to comply with the 100-yard rule, Plaintiffs must either (1) abandon their *halachic* obligation to defend themselves appropriately by leaving firearms at home, or (2) abandon their religious obligation to walk to synagogue for communal prayer

and Sabbath services to be able to transport firearms to the synagogue. Either way, the 100-yard rule "pressure[s]" Plaintiffs "to change or modify [their] actions, which would otherwise violate [their] sincerely held religious beliefs," which "qualifies as a cognizable burden" under the Free Exercise Clause. *Polk v. Montgomery Cnty. Pub. Schs.*, 166 F.4th 400, 413 (4th Cir. 2026), *petition for cert. filed*, No. 26-8 (U.S. June 26, 2026).

Thus, Montgomery County must demonstrate that the 100-yard rule is both neutral and generally applicable, or else that it satisfies strict scrutiny. The County can do neither.

**1. The 100-Yard Rule Is Not Generally Applicable**

A law is not generally applicable if it treats "*any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). This inquiry asks "whether the law 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" *Perry v. Marteney*, 172 F.4th 315, 325 (4th Cir. 2026) (quoting *Fulton*, 593 U.S. at 534), *petition for cert. filed*, No. 26-319 (U.S. Sep. 4, 2026). "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon*, 593 U.S. at 62.

This Court has already recognized that Montgomery County's justification for its ordinances is "to prevent gun violence." Mem. Op. at 50. Thus, if the County allows "secular conduct that undermines" its asserted interest in preventing gun violence in a similar way that allowing Rabbi Shapiro or SSJC's members to walk past certain

locations with a firearm on their way to synagogue would, its ordinances are not generally applicable. *Fulton*, 593 U.S. at 534. Montgomery County does just that.

First, under Section 57-11, Montgomery County allows for firearms to be transported within 100 yards of a place of public assembly as long as they are "in a motor vehicle" and "worn, carried, or transported … by a person to whom a permit to wear, carry, or transport the handgun has been issued" by the Maryland State Police. Montgomery Cnty., Md., Code § 57-11(b)(6)(B). This means that if Rabbi Shapiro were to take the exact same firearm, he could drive a car down the exact same streets he currently walks to get to the synagogue without issue. But because his religious beliefs require him to walk to reach the synagogue—and there is no alternative route that would take him away from regulated areas—he cannot carry his firearm with him to fulfill his religious responsibilities at the synagogue.

The vehicle exception undermines Montgomery County's asserted interest in preventing gun violence more than permitting congregants to walk with their firearms would. An individual in a vehicle is only a few feet from where a pedestrian on the sidewalk would be, so the danger posed by their possession of a firearm in that location is at least equal to a pedestrian's. Moreover, an assailant with a gun hidden in their car is less visible than an individual peacefully walking on the street, meaning their presence (and the existence of their gun) is more difficult to detect. And the assailant in a car has an easier time escaping after committing an act of violence, making it more likely that an assault takes place from a car than from the sidewalk. Thus, if anything, Montgomery County permits secular conduct that is far

*more* likely to enable gun violence than Plaintiffs' religious exercise of walking to synagogue ever would.

Second, Montgomery County allows for firearms to be transported within 100 yards of locations that are not defined as places of public assembly though they bear similar characteristics to covered locations. *See* Montgomery Cnty., Md., Code §§ 57-1, 57-11. As this Court rightly held when analyzing the places-of-worship ban, there are "numerous other privately owned businesses and properties" (such as fraternal lodges) that bear similar characteristics to places of public assembly that are not included in the County's prohibition. Mem. Op. at 51-52. That Montgomery County allows firearms to be carried within 100 yards of these locations—despite the same potential for gun violence at any one of them—means the law is not generally applicable. *See id.* at 52–53.

These exceptions to the 100-yard rule render it not generally applicable. It must therefore satisfy strict scrutiny, a burden the County has never argued it meets. Regardless, the rule fails strict scrutiny.

**2. The 100-Yard Rule Fails Strict Scrutiny.**

Strict scrutiny is the "most demanding" constitutional standard, *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997), and Defendants bear the burden of satisfying this high bar, *Redeemed Christian Church of God (Victory Temple) Bowie v. Prince George's Cnty.*, 17 F.4th 497, 510 (4th Cir. 2021). "A government decision fails strict scrutiny if it is not narrowly tailored to advance a compelling state interest." *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 265 (4th Cir. 2019). To be narrowly tailored, a law "must be the 'least restrictive means' of

furthering" the State's interest. *In re Murphy-Brown, LLC*, 907 F.3d 788, 799 (4th Cir. 2018).

The County has not even attempted to meet this standard. But even granting that the County has a "broadly formulated" interest in preventing gun violence writ large, that does not mean that it has a compelling interest in refusing to grant the "specific exemption[]" of these "particular religious claimants" to safely transport firearms to synagogue. *Fulton*, 593 U.S. at 541. Furthermore, even if it did, the 100-yard rule is not narrowly tailored to reducing gun violence for at least two reasons. First, the 100-yard rule fails narrow tailoring because it is "underinclusive," meaning that it "leav[es] appreciable damage to [the County's] interest unprohibited." *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 172 (2015)). As explained, the buffer zone permits individuals transporting guns to be within 100 yards of defined places of public assembly if they are in a car. And it permits individuals with a firearm, whether walking or driving, to be within 100 yards of other locations that bear materially identical characteristics and risks for violence as defined places of public assembly. Both sets of unprohibited conduct pose at least the same risk of gun violence as permitting peaceable pedestrians to walk past another church on their way to synagogue. "Where the government permits other activities to proceed with precautions," such as allowing permit holders to carry guns in cars, "it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions

that suffice for other activities suffice for religious exercise too." *Tandon*, 593 U.S. at 63.

Second, the 100-yard rule fails narrow tailoring because the County could implement several measures less restrictive of Plaintiffs' religious exercise. "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). Here, less restrictive alternatives abound. For example, Maryland's existing criminal law that regulates "[w]earing, carrying, or transporting firearms" in "area[s] for children and vulnerable individuals," "government or public infrastructure area[s]," and other areas including "a museum; an amusement park;" or "a racetrack," does not have a buffer zone requirement. Md. Code Ann., Crim. Law § 4-111. And other municipalities in Maryland that do use buffer zones have exemptions for permit holders, *see* Balt., Md., Code art. 19. § 59-5(b), (d), or for unloaded firearms, *see* Prince George Cnty., Md., Code § 14-140, either of which would permit Rabbi Shapiro to walk to synagogue with his firearm. As discussed above, the federal Gun-Free School Zones Act likewise exempts individuals licensed to carry under state law from its ban on firearms within 1,000 feet of a school. 18 U.S.C. § 922(q)(2)(B)(ii). When so many other jurisdictions (including the State of Maryland) have less restrictive regulations, that "suggests" Montgomery County "could satisfy its security concerns through a means less restrictive" and "must, at a minimum, offer persuasive reasons why it believes that it must take a different course." *Cf. Holt v. Hobbs*, 574 U.S. 352, 368–69

(2015) (applying this standard to security protocols in prisons). The County has not done so and thus fails strict scrutiny.

## II. Plaintiffs Will Suffer Irreparable Harm Without an Injunction Against the 100-Yard Rule

Without injunctive relief against the 100-yard rule, Plaintiffs will suffer substantial irreparable harm. That is in part because, where plaintiffs have shown "a likely constitutional violation, the irreparable harm factor is satisfied." *Leaders of a Beautiful Struggle*, 2 F.4th at 346. And, as the Court recognized in partially granting Plaintiffs' motion, "[a] burden on religious practice cannot be fully remedied by money damages, and thus can be considered irreparable." Mem. Op. at 68–69 (citing *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 609 (8th Cir. 2022); *Alameen v. Coughlin*, 892 F. Supp. 440, 448 (E.D.N.Y. 1995)). In addition, as the Court also recognized, "[a] threat to safety is likely an irreparable harm." Mem. Op. at 68 (citing *Dominion Energy Transmission, Inc. v. 0.11 Acres of Land, More or Less, in Doddridge Cnty.*, No. 19-cv-182, 2019 WL 4781872, at *6 (N.D. W. Va. Sep. 30, 2019); *United Steelworkers of Am. AFL-CIO v. Blaw-Knox Foundry & Mill Mach. Inc.*, 319 F. Supp. 636, 641 (W.D. Pa. 1970)). As explained above, this motion remains extremely urgent as a result of upcoming Jewish observances and the anniversaries of October 7, 2023.

## III. The Balance of Harms and Public Interest Favor a Preliminary Injunction

The balance of harms and the public interest favor a preliminary injunction against the 100-yard rule for the same reasons that they favored an injunction against the ban on firearms in places of worship. As the Court has explained, the

State's Attorney has declined to prosecute violations criminally while this litigation is pending, only licensed firearm owners are affected, and "this law has essentially been on hold for several years already"—so any "harm" an injunction might cause is "mild" and "does not outweigh the other factors." Mem. Op. at 69. And not only would as-applied relief against the 100-yard rule be limited to "licensed firearm owners"—it would be limited to Rabbi Shapiro and SSJC's members when they walk between the synagogue and their homes. An injunction would not harm any other interested persons because there is no reason to believe that Rabbi Shapiro and SSJC's members would carry firearms for any purpose other than lawful self-defense.

Moreover, the government "is in no way harmed by issuance of a preliminary injunction which prevents [it] from enforcing restrictions likely to be found unconstitutional." *Leaders of a Beautiful Struggle*, 2 F.4th at 346 (quoting *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013)). "If anything, the system is improved by such an injunction." *Id.* And "it is well-established that the public interest favors protecting constitutional rights." *Id.*

## CONCLUSION

For these reasons, Plaintiffs respectfully ask this Court to reconsider its partial denial of their Motion for Temporary Restraining Order or Preliminary Injunction and enter a preliminary injunction prohibiting Defendants from enforcing the 100-yard rule against Rabbi Shapiro and SSJC's members as they walk between the synagogue and their homes. In the alternative, Plaintiffs ask the Court to grant a preliminary injunction pending appeal providing the same relief.

Dated: September 24, 2026

Respectfully Submitted,

/s/ Jacob Huebert
Andrew J. Morris (Bar No. 22945)
Jacob Huebert (*pro hac vice*)
New Civil Liberties Alliance
4250 N. Fairfax Drive
Suite 300
Arlington, VA 22204
(202) 869-5210
andrew.morris@ncla.legal
jacob.huebert@ncla.legal

Eric S. Baxter (Bar No. 15640)
Daniel L. Chen (*pro hac vice* pending)
Benjamin A. Fleshman (admission pending)
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave., NW
Suite 400
Washington, DC 20006

*Attorneys for Plaintiff Silver Spring Jewish Center*

/s/ J. Menashe Shapiro
Rabbi J. Menashe Shapiro,
805 Whittington Terrace
Silver Spring, Maryland 20901
T: (216) 645-2094
F: (216) 831-3736
RabbiMenasheShapiro@gmail.com

*Pro Se Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| Silver Spring Jewish Center, Inc., et al. | ) | |
| | ) | |
| *Plaintiffs*, | ) | Civil Action No. 8:26-cv-02963-DKC |
| | ) | |
| v. | ) | |
| | ) | |
| Montgomery County, Maryland, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**[PROPOSED] ORDER**

Upon consideration of Plaintiffs' Motion to Amend Judgment, or in the Alternative, for Injunction Pending Appeal, and the record herein, it is, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Plaintiffs' Motion is GRANTED as follows:

2. Montgomery County, Maryland, Marc Elrich, and Darren Francke, together with their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order, ARE PRELIMIARILY ENJOINED from enforcing Montgomery Code §§ 57-11(a)(1) against Plaintiff Silver Spring Jewish Center's members, and against Plaintiff Rabbi J. Menashe Shapiro, to the extent that those provisions prohibit them from possessing or transporting a handgun while walking between their respective homes and their synagogue;

3. The requirement of security is WAIVED; and

4. The clerk will transmit copies of this Order to Plaintiff Rabbi J. Menashe Shapiro and to counsel for the parties.

DEBORAH K. CHASANOW
United States District Judge