# ATTACHMENT 13

Transcript of Preliminary Injunction Hearing
September 3, 2026

# EXCERPTS

*Silver Spring Jewish Center, Inc., et al. v. Montgomery County, Maryland, et al.*
No. 8:26-cv-02963-DKC (D. Md.), ECF No. 38

**Transcript pages included:**

1 (title page); 13; 76–77; 83–84; 102–103; 132 (Certificate of Official Reporter)

This attachment contains excerpts only. The complete 143-page transcript is filed in the district court at ECF No. 38. See 4th Cir. R. 25(a)(6).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| JULIO BARRETO, JR., et al., Plaintiffs, vs. MONTGOMERY COUNTY, MARYLAND, Defendant. | Civil Case No: 8:26-cv-02912-DKC |

and

| | |
|---|---|
| SILVER SPRING JEWISH CENTER, et al., Plaintiffs, vs. MONTGOMERY COUNTY, MARYLAND, Defendant. | Civil Case No: 8:26-cv-02963-DKC |

TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
BEFORE THE HONORABLE DEBORAH K. CHASANOW
UNITED STATES DISTRICT COURT JUDGE
THURSDAY, SEPTEMBER 3, 2026, AT 9:31 A.M.

***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***

relief, I have to decide whether it's a preliminary -- a TRO or a preliminary injunction, so I also want to know whether there is any discovery, any factual development that might suggest that we should do a TRO only today and then convene for something on a more permanent preliminary injunction later.

Examples, in the MSI case, the injunctive relief order only relates to permit holders. And in the SSJI case, it appears to be limited to the parties, even though the complaint seeks a declaration, which may be of broader import. So that my understanding is, and this is why you will have to focus on this, is that the only relief being sought in the SSJI case is for SSJI and the Rabbi.

I know we have 57-10, 57-11, and 57-1 at issue. We have standing. Obviously we had a few new wrinkles here.

I then have to look at likelihood of success, and we have issues concerning local law, preemption, and then we get to the constitutional challenges.

The parties need to focus very clearly on whether it's a facial challenge or an as-applied, and make sure your arguments are focused on whatever type of challenge you think I need to address at this stage.

For the Second Amendment, I need to know precisely what sensitive places are actually in controversy in this case and/or for the purposes of preliminary injunctive relief. I need to know more about the 100-yard buffer and how the parties

protect permit holders with respect to carry everywhere outside the county with the exception of 57-11. That narrows the case down to 57-11.

**THE COURT:** A -- okay.

**MR. PENNAK:** I would agree with that. I just simply am not willing to accept the premise that that amendment is valid, that's all.

**THE COURT:** Okay.

**MR. PENNAK:** So I --

**THE COURT:** Thank you.

**MR. PENNAK:** Thank you, Your Honor.

**THE COURT:** All right. The Second Amendment challenge by the Silver Spring Jewish Center and Rabbi Menashe Shapiro. But let's focus on the Second Amendment, because I think in order to be entitled to injunctive relief, you're going to have to show likelihood of success on a claim, not I can't do -- oh, they've got a partial shot on Second Amendment, partial shot on religion, you know what I mean.

So we can -- we have to hold these watertight.

So can you address the Second Amendment challenge?

**MR. HUEBERT:** Yes, Your Honor. The plaintiffs in the Silver Spring Jewish Center case, unlike the plaintiffs in the Barreto case, challenge only two provisions of Montgomery County law. We challenge the ban on firearms and places of worship, and we ban -- we challenge the ban on firearms within

a hundred yards of any place of public assembly, and that's all.

And these are facial challenges to the -- to the provisions.

Certainly the ban on places of worship generally is a facial challenge. The 100-yard rule challenge may also be as-applied in as much as there are details about how this particularly affects the synagogue's members and Rabbi Shapiro in their ability to walk to the synagogue while armed, as their religious beliefs require.

**THE COURT:** Okay. All right. Go ahead.

**MR. HUEBERT:** Would you like me to just proceed to address the merits?

**THE COURT:** Yes, please.

**MR. HUEBERT:** So with respect to the ban on firearms in places of worship, the defendants haven't met their Second Amendment burden under *Bruen*. They haven't cited any historical analogues that could justify such a ban in places of worship.

In *Wolford*, the Supreme Court said that for historical -- for something to be a relevant historical analogue for Second Amendment purposes, the restriction on firearms had to be widespread, well known, and widely accepted during the relevant time period, and the defendants have not shown that.

They have cited some 19th century territorial laws. The

And, you know, after *Bruen*, the State of Maryland reacted in an appropriate way. It started issuing carry permits to anyone who wasn't lawfully disqualified, who -- without them having to show any special cause.

And then the County responded to that by just banning firearms in more places regardless -- even if you do have a carry permit.

And the obvious purpose here is to frustrate people's ability to exercise the right that the Court recognized in *Bruen*. And the Court did not allow that in the *Wolford* case, and the Court should not allow Montgomery County to do that here.

**THE COURT:** Okay. We are going to get to the First Amendment and the Fourteenth, maybe, because -- maybe while I have you up here.

Is there any way you win on the Fourteenth Amendment if you've not won on the establishment of the -- the free exercise?

**MR. HUEBERT:** I think those travel together.

**THE COURT:** Okay. Just -- I thought so.

And, eventually, I would like you to look at the requested language and see if there is any wiggle room such as enjoining enforcement within a hundred yards of a different or another place of assembly while they are on the way to a place of worship. You know, if there's a modifier that's appropriate or

at least acceptable here.

So, anyway, we will look at that. But just keep that in mind.

**MR. HUEBERT:** Thank you.

**RABBI SHAPIRO:** Your Honor, may I?

**THE COURT:** Sure.

**RABBI SHAPIRO:** Thank you, Your Honor.

Your Honor, Menashe Shapiro, one of the plaintiffs in the SSJC case.

I just want to add two very brief comments within the confines of the Second Amendment discussion, maybe three.

Your Honor asked my colleague about narrowing since Judge Chuang's decision. Of course, I would like it if the Supreme Court had done so more explicitly. But in describing -- in the *Wolford* decision, when the Supreme Court explained why the Oregon statute was not a permissible example, it said that a -- the statute, which was in 1893, so it said it was more than a century after the Second Amendment and many years after the ratification of the Fourteenth Amendment. I'm paraphrasing, but only very slightly.

So we see that a case from 1893 is considered too far forward under either time periods to be relevant. That applies also to the examples that the County has given. Some of them are, of course, slightly older in time than 1893. But others, we think, are just invalidated as relevant historical

merits in the end.

And so that's the reason why what plaintiffs have shown here is enough. They have shown that these analogues don't suffice. The defendants haven't come forward with anything else; theoretically, they could later. But right now, it appears the plaintiffs are likely to prevail on the merits, and that's all that matters.

**THE COURT:** For the place of worship.

**MR. HUEBERT:** At least for the place of worship.

**THE COURT:** Right. What about for the buffer?

**MR. HUEBERT:** Well, that could be looked at as facial or as-applied. We certainly would maintain, as part of our argument, that these are categorically unjustifiable because there are no historical analogues.

**THE COURT:** Right. But maybe this will get to what I asked you before, you are only asking me to grant relief for the synagogue and this plaintiff, your co-plaintiff here.

**MR. HUEBERT:** That's right. The synagogue's members and our co-plaintiff.

**THE COURT:** Yeah, their walk toward the place of worship.

**MR. HUEBERT:** Certainly the relief that we asked for ultimately does not -- particularly with respect to Rabbi Shapiro is not limited to that. This illustrates his injury, but it's not his only injury, because he's a permit holder and

would like to carry whatever he wants.

**THE COURT:** For purposes of preliminary injunctive relieve, or TRO at this point, it would -- your most pressing need is the trip from home to place of worship.

**MR. HUEBERT:** I agree with that. We've asked for broader relief. That's in our proposed order. We think that would be appropriate. But, of course, the relief that the Court has just suggested would certainly greatly mitigate the overall constitutional injury and address the most pressing need.

**THE COURT:** Okay. Thank you.

Okay. Rabbi?

**RABBI SHAPIRO:** Thank you, Your Honor.

Just four brief points.

The defendants claim that nothing since Judge Chuang's decision came out has narrowed, changed, or altered the scope of what is a permissible sensitive-space regulation. I think they ignore that I already provided at least some clarification to that, but there was -- there was more in *Wolford.*

So, for example, *Wolford* reiterates *Bruen*'s claim that it must be widespread, well known, and widely accepted.

When applying the examples raised in Wolford, it says that those places did not meet that burden. So we know more about what it means to be widespread, well known, and widely accepted.

CERTIFICATE OF OFFICIAL REPORTER

I, Paula J. Leeper, Federal Official Court Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 21st day of September 2026.

*/S/ Paula J. Leeper*

____________________

Paula J. Leeper, RMR, CRR
Federal Official Reporter