**No. 26-2623**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

SILVER SPRING JEWISH CENTER, INC.; RABBI J. MENASHE SHAPIRO,
*Plaintiffs-Appellants*,

v.

MONTGOMERY COUNTY, MARYLAND,
*Defendant-Appellee*.

---

On Appeal from the United States District Court for the District of Maryland
No. 8:26-cv-02963-DKC (Hon. Deborah K. Chasanow)

---

# DEFENDANT-APPELLEE'S OPPOSITION TO MOTION FOR INJUNCTION PENDING APPEAL

---

Jeffrey M. Schwaber
Deanna L. Peters
STEIN SPERLING BENNETT
DE JONG DRISCOLL PC
1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852
(301) 340-2020
jschwaber@steinsperling.com
dpeters@steinsperling.com

*Attorneys for Defendant-Appellee*
Montgomery County, Maryland
[Additional counsel listed on signature page]

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .................... ii

INTRODUCTION .................... 1

BACKGROUND .................... 1

A. Chapter 57 .................... 1

B. Procedural Posture. .................... 3

STANDARD .................... 4

ARGUMENT .................... 5

I. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL. 5

A. The 100-Yard Rule Is Constitutional Under The Second Amendment. .................... 5

1. Plaintiffs Advanced A Facial Challenge To The 100-Yard Rule. .................... 5

2. The District Court Did Not Apply An Incorrect Standard. .................... 8

3. The District Court Properly Exercised Its Discretion To Reject Plaintiffs' Facial Challenge To The 100-Yard Rule. .................... 9

B. The 100-Yard Rule Does Not Violate the Free-Exercise Clause. .................... 11

1. The Rule Does Not Burden Plaintiffs' Sincere Religious Beliefs. .................... 11

2. The 100-Yard Rule Readily Survives Rational-Basis Scrutiny. .................... 13

3. The 100-Yard Rule is Generally Applicable. .................... 14

a. The vehicle exception .................... 15

b. The 'walking armed' comparison .................... 16

II. PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE HARM. .................... 18

III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH AGAINST AN INJUNCTION PENDING APPEAL .................... 19

CONCLUSION ....................................................................................................20

CERTIFICATE OF COMPLIANCE ..........................................................................22

INDEX OF ATTACHMENTS ...................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*, 585 U.S. 579 (2018) ....................19

*Alive Church of the Nazarene, Inc. v. Pince William Cnty., Virginia*, 59 F.4th 92 (4th Cir. 2023) ....................13

*Bianchi v. Brown*, 111 F.4th 438 (4th Cir. 2024) ....................9

*Deque Sys. Inc. v. Browerstack, Inc.*, 177 F.4th 585 (4th Cir. 2026) ....................12

*Doe v. Reed*, 561 U.S. 186 (2010) ....................7

*Direx Isr., Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802 (4th Cir. 1992) ....................4

*Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872 (1990) ....................14

*Jensen v. Maryland Cannabis Admin.*, 151 F.4th 169 (4th Cir. 2025) ....................5

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022) ....................11

*Kim v. Bd. of Educ. of Howard Cnty.*, 93 F.4th 733 (4th Cir. 2024) .......... 11, 13, 14

*Kipke v. Moore*, 165 F.4th 194 (4th Cir. 2026) ....................10

*Maryland v. King*, 567 U.S. 1301 (2012) ....................19

*Maryland Shall Issue, Inc. v. Montgomery County, Maryland*, 680 F. Supp. 3d 567 (D. Md. 2023) ....................9, 20

*Mountain Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197 (4th Cir. 2019) ....................18

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022) ....................2, 10

*Nken v. Holder*, 556 U.S. 418 (2009) ....................5, 19

*Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396 (4th Cir. 1998) ....................4

*Protect Our Parks, Inc. v. Buttigieg*, 10 F.4th 758 (7th Cir. 2021) ....................5

*Respect Me. PAC v. McKee*, 562 U.S. 996 (2010) ....................4, 5

*Schall v. Martin*, 467 U.S. 253 (1984) ....................19

*Tandon v. Newsom*, 593 U.S. 61 (2021) .................... 15, 17

*United States v. Morrison*, 529 U.S. 598 (2000) ....................20

*United States v. Rahimi*, 602 U.S. 680 (2024) ....................9, 11

*United States v. Salerno*, 481 U.S. 739 (1987) ....................19

*White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179 (4th Cir. 2022) ....................7

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ....................4, 18

*Wolford v. Lopez*, 609 U.S. 185 (2026) ....................6

*Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024) .................... 10, 11

**Statutes**

Md. Code Ann., Crim. Law, § 4-209(b)(1)(iii) ....................17

Md. Code Ann., Cts. & Jud. Proc., § 3-405 ....................18

**Rules**

Fed. Rule App. P. 8 ....................4

## INTRODUCTION

Plaintiffs sought and obtained narrowly tailored emergency relief in the District Court, on a facial challenge to a longstanding but recently narrowed County law. Apparently unsatisfied, Plaintiffs sought below to recast their challenge as an "as applied" one, and to sweep the 100-yard buffer zone that had been part of the County's law since 2022 into its now dramatically broadened net. The District Court rejected that attempted repackaging. This appeal followed, as did this second bite at an emergency apple, now hoping this Court will ignore the history below.

There is no emergency, and no basis for ignoring or undoing the well and carefully reasoned decision of the District Court on the question of injunctive relief.

## BACKGROUND

### A. Chapter 57

The County enacted Chapter 57 of the County Code in 1981. In 1997, the County enacted Section 57-7A, prohibiting (with some exceptions) the sale, transfer, possession, or transport of a firearm "in or within 100 yards of a place of public assembly." Dkt. 26-3 at 6-7.[1] A "place of public assembly" included a place of worship and a government-owned park or recreation facility, as well as "all property

[1] Record citations of "App.Dkt." are to those portions of the district court docket, No. 8:26-cv-02963-DKC, that Appellants attached to the Motion, by ECF number and the page number in the ECF header. Record citations of "Dkt." are to those portions of the district court docket that Appellants did not include, and are attached hereto. "Tr." refers to the transcript of the September 3, 2026 hearing, Dkt. 38.

associated with the place, such as a parking lot or grounds of a building." *Id*. Section 57-7A ultimately became § 57-11, and maintained places of worship and property associated with places of public assembly within its scope. Dkt. 26-4 at 3, 4-6.

In 2021, the County enacted Bill 4-21, which expanded places of public assembly to include "a place where the public may assemble, whether the place is publicly or privately available, including" parks, places of worship, and schools. Dkt. 26-6 at 5-6. In 2022, the County narrowed its definition of "place of public assembly" in Bill 21-22E to align with *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). *See* Dkt. 26-7 at 4-5.

Bill 21-22E continued the existing prohibition of firearms within 100 yards of a place of public assembly but removed the statement that a place of public assembly was a place "where the public may assemble." *See id.* at 4. The Bill also narrowed its scope by removing the statement that a place of public assembly "include[d]" locations listed. *See id*. Bill 21-22E continued to include parks, places of worship, and schools—along with all property associated with the place—as places of public assembly. *See id.* at 4-5. It also added several "sensitive places" where *Bruen* recognized weapons could be constitutionally restricted, as well as language to prevent the carry of a firearm within 100 yards of a place of public assembly, even when the individual has a wear-and-carry permit. *See* Dkt. 26-9 at 3, 4-5. That restriction has been County law *since 2022*.

On July 27, 2026, the County enacted Bill 23-26E, which further narrowed firearm prohibitions by removing several locations as places of public assembly and adding certain exceptions for wear-and-carry license holders. Dkt. 26-10 at 3-4, 5-7. Bill 23-26E prohibits firearms "[i]n or within 100 yards of a place of public assembly." *Id*. at 6.

**B. Procedural Posture**

Plaintiffs filed their Injunction Motion on July 30, 2026. App.Dkt. 4-9. Arguing that "Montgomery County's ban on firearms in places of worship violates the Second Amendment on its face" (App.Dkt. 4-9 at 8), Plaintiffs devoted their Injunction Motion almost entirely to places of worship. They limited their 100-yard rule challenge to a single-paragraph argument. App.Dkt. 4-9 at 19.

During oral argument on September 3, Plaintiffs confirmed they mounted "facial challenges" to § 57-11. Tr. at 77:3. On September 10, the District Court ruled that Plaintiffs' "cursory and conclusory" Second Amendment challenge to the 100-yard rule failed because, "[a]s a facial challenge, [Plaintiffs] must do more than they have." App.Dkt. 4-5 at 38. The Court denied Plaintiffs' First Amendment challenge because "the 100-yard provision is generally applicable and facially neutral." *Id*. at 56.

On September 24, Plaintiffs filed their Motion to Amend Judgment. App.Dkt. 4-6. Ignoring clear admonition in this Circuit that such a motion "may not be used

… to argue a case under a novel legal theory that the party had the ability to address in the first instance" (*Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)), Plaintiffs shifted course entirely from their Injunction Motion. They newly presented an as-applied challenge to the 100-yard rule—one that appeared nowhere in their injunction papers and was referenced only fleetingly in oral argument. *See* Tr. at 77:6-7. Plaintiffs have not submitted any affidavit of any kind as to the "particular circumstances" of any SSJC member other than Rabbi Shapiro upon which any purported as-applied challenge depends. Plaintiffs even criticized the Court for failing to consider in their Free Exercise claims "relevant comparators" that they never had raised.

**STANDARD**

Preliminary injunctions are "extraordinary remed[ies] involving the exercise of very far-reaching power," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Direx Isr., Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 811 (4th Cir. 1992). In this Court, such a request requires more than merely seeking a second bite at the injunction apple.

A request for an injunction pending appeal under Fed. R. App. P. 8 "[d]emands a significantly higher justification" than a request for a stay, because unlike a stay, an injunction "does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld" by the lower court. *Respect Maine PAC*

*v. McKee*, 562 U.S. 996 (2010). The "demanding" four-part test considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 433-434 (2009) (citation omitted).

The first two factors are the most critical. It is not enough to show some "possibility of irreparable injury" or that the chance of success on the merits is "better than negligible." *Id*. at 434-35 (citations omitted); *Protect Our Parks, Inc. v. Buttigieg*, 10 F.4th 758, 763 (7th Cir. 2021) ("the mere possibility of success is not enough; [a plaintiff] must make a 'strong' showing on the merits."). "'Denying a preliminary injunction only takes the rejection of a single factor.'" *Jensen v. Maryland Cannabis Admin.*, 151 F.4th 169, 174 (4th Cir. 2025), cert. denied, 146 S. Ct. 1626, 224 L. Ed. 2d 14 (2026).

## ARGUMENT

### I. Plaintiffs Are Unlikely To Succeed On The Merits Of Their Appeal

### A. The 100-Yard Rule Is Constitutional Under The Second Amendment

#### 1. Plaintiffs Advanced A Facial Challenge To The 100-Yard Rule.

As the District Court observed, "the preliminary relief motion did not specify that it mounted an as-applied challenge." App.Dkt. 4-3 at 8. In the single paragraph

of their Injunction Motion devoted to the 100-yard rule (App.Dkt. 4-9 at 18-19), Plaintiffs argued it (i) comprises "an unjustified obstruction of an individual's right to carry a firearm at all" and (ii) "strips Montgomery County residents of their ability to go about their usual business while armed." *Id*. at 18-19 (citing *Wolford v. Lopez*, 609 U.S. 185 (2026)). Plaintiffs challenged the County's "ban on firearms within 100 yards of any place of public assembly" (App.Dkt. 4-11 at 9), and moved for an injunction "barring Defendants from enforcing or otherwise giving effect to [Bill 23-26E's] prohibition on carrying firearms inside places of worship and within 100 yards of so-called 'places of public assembly,' as defined[.]" App.Dkt. 4-9 at 1. Plaintiffs conceded to the District Court that "these are facial challenges [to the] provisions." Tr. at 76:21-77:4.

Plaintiffs' first mention at oral argument that their "100-yard challenge may also be as-applied" (Tr. at 77:6-7) was a label only and did not change the substance of their facial challenge. Plaintiffs argued that the 100-yard rule, "much like the statutes struck down in *Wolford* [ ] does, indeed, restrict people from exercising the right that the Court recognized in *Bruen*, the right to carry a firearm as they go about their daily lives," and "makes it essentially impossible … to exercise the right that *Bruen* recognized." Tr. at 82:13-22. Plaintiffs proclaimed that their "burden at the preliminary injunction stage and in a facial challenge doesn't present any problem" for them. Tr. at 101:16-17. The District Court properly determined that "[c]onsidered

altogether, [Plaintiffs'] requested relief 'reach[ed] beyond the[ir] particular circumstances,' and therefore they needed to satisfy the facial challenge standard to the extent of their requested relief." App.Dkt. 4-3 at 9 (quoting *Doe v. Reed*, 561 U.S. 186, 194 (2010)).

Plaintiffs baldly posit that they "never sought to enjoin the operation of § 57-11(a) 'completely.'" App.Dkt. 4-1 at 25. First, their Motion belies that statement. *See* App.Dkt. 4-9 at 1. Second, that Plaintiffs requested relief "within 100 yards of every place of public assembly"—regardless of what, if any, of those places were along their walk to synagogue—necessarily means that Plaintiffs asked the District Court to decide their challenge "without regard to its impact" on them. *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 205 (4th Cir. 2022).

Plaintiffs continue their facial challenge here. They ask this Court to enjoin enforcement against SSJC members "from possessing or transporting a handgun while walking between their respective homes and their synagogue" (App.Dkt. 4-1 at 33), despite the complete absence from the record of *any* fact that would provide the "particular circumstances" on which unidentified SSJC members may claim an as-applied challenge. Any resulting conclusion regarding the 100-yard rule cannot depend on particular circumstances that were not before the District Court, and are not before this Court, and therefore must be a facial challenge.

**2. The District Court Did Not Apply An Incorrect Standard.**

The District Court confirmed that it "analyzed what was before it: not an as-applied challenge, but a facial challenge." App.Dkt. 4-3 at 10.[2] This was not any "different view" taken on reconsideration. App.Dkt. 4-1 at 25. As the District Court explained, it was "not clear" that Rabbi Shapiro "ha[d] properly asserted an as-applied challenge." App.Dkt. 4-5 at 42. The Court therefore "merely 'set out the question' of the propriety of Rabbi Shapiro's alleged as-applied challenge and determined that in its 'current' form, it failed." App.Dkt. 4-3 at 7-8. There was no improper burden shifting, because Rabbi Shapiro's unarticulated as-applied "challenge" never got that far.

Plaintiffs nonetheless persist in mischaracterizing the District Court's purported reliance upon some incorrect allocation of burden that it expressly disclaimed. The District Court observed that Rabbi Shapiro failed to "identify" any particular circumstances, *i.e.*, "the particular reason he is prohibited." App.Dkt. 4-5 at 43. In other words, the District Court did not "reject[ ] Rabbi Shapiro's as-applied challenge on precisely that basis" (App.Dkt. 4-1 at 24); rather, it determined that

---

[2] Plaintiffs take out of context the District Court's statement that "inasmuch as they seek relief only for themselves, [Plaintiffs] would only need to succeed on an as-applied challenge." App.Dkt. 4-5 at 15. That passage was included in the Court's "separate section about overarching legal standards that govern a preliminary relief motion" (App.Dkt. 4-3 at 7) and was not a part of the Court's analysis of Plaintiffs' Second Amendment claims.

there was no "particular circumstance" presented by Rabbi Shapiro on which any as-applied challenge conceivably could have been made.

### 3. The District Court Properly Exercised Its Discretion To Reject Plaintiffs' Facial Challenge To The 100-Yard Rule.

Plaintiffs' critique is misguided that the County failed to meet some burden to cite historical analogues supporting the 100-yard rule. App.Dkt. 4-1 at 18. On the Injunction Motion that was actually before it—and not the re-styled motion later submitted under the guise of reconsideration—it was Plaintiffs' burden "to establish 'that no set of circumstances exists under which [the statute at issue] would be valid,' or that the statute lacks any 'plainly legitimate sweep.'" *Bianchi v. Brown*, 111 F.4th 438 (4th Cir. 2024). For its part, the County needed only to "demonstrate that [the 100-yard rule] is constitutional in some of its applications." *United States v. Rahimi*, 602 U.S. 680, 693 (2024). The County met that burden, by citing precedent for the recognition of the constitutionality of restrictions not only on school grounds (which are encompassed by the 100-yard rule) but also within buffer zones themselves. *Maryland Shall Issue, Inc. v. Montgomery Cty., Maryland*, 680 F. Supp. 3d 567, 583, 590 (D. Md. 2023) (cited in App.Dkt. 4-10 at 30).

Suggesting it is the County's burden to produce separate analogues to support a "historical tradition of banning firearms within 100 yards of places of worship, parks, or schools" (App.Dkt. 4-1 at 22), Plaintiffs unreasonably dissect § 57-11(a)'s restriction in a manner that this Court—and at least one other Circuit addressing the

issue—have rejected. § 57-11(a) restricts firearms "[i]n or within 100 yards of a place of public assembly." Dkt. 26-10 at 6. In *Kipke v. Moore*, this Court analyzed the zone around a sensitive place as "analogous to" the sensitive place itself and therefore considered it "sensitive for the same reasons [the sensitive place is] considered sensitive." 165 F.4th 194, 212 (4th Cir. 2026).

*Bruen* itself "assume[d] it settled" that schools are among "'sensitive places where arms carrying could be prohibited consistent with the Second Amendment.'" 597 U.S. at 30. This Court has "adopted the Supreme Court's dicta as to schools," as sensitive places. *Kipke*, 165 F.4th at 212, n. 3. Similarly, this Court "join[ed] the reasoning of the Second and Ninth Circuits" to hold that a prohibition "on carrying guns in urban public parks is constitutional." *Id.* at 214. This Court and others have determined that "'as soon as modern parks arose, municipalities and states enacted laws prohibiting the carrying of firearms into parks.'" *Id.* (citing *Wolford v. Lopez*, 116 F.4th 959, 982 (9th Cir. 2024)).

The weight of these authorities removes any need to further examine historical analogues specific to buffer zones. The District Court was correct to determine that the 100-yard rule around schools comprises "[o]ne likely constitutional application under Section 57-11(a)." App.Dkt. 4-5 at 40. It would be nonsensical to require the County to then take an additional step to show "a historical tradition of banning

firearms within 100 yards of places of worship, parks, or schools" (App.Dkt. 4-1 at 22), when no legal authority requires it to do so.

The Ninth Circuit rejected "as illogical" a similar argument, explaining:

> The issue in this case concerns categories of property, not categories of people. If a particular place is a "sensitive place" such that firearms may be banned, then firearms may be banned—for everyone, including permit holders—consistent with the Second Amendment.

*Wolford*, 116 F.4th at 981 (citations omitted, cleaned up, underline in original). An approach that instead would require a government to justify each phrase of a restriction with separate historical analogues would force a government to find a "'dead ringer' or a 'historical twin'"—an approach rejected by the Supreme Court. *See Rahimi*, 602 U.S. at 692.

## B. The 100-Yard Rule Does Not Violate the Free-Exercise Clause.

### 1. The Rule Does Not Burden Plaintiffs' Sincere Religious Beliefs.

To implicate the Free Exercise Clause, "state action must burden religious exercise." *Kim v. Bd. of Educ. of Howard Cnty.*, 93 F.4th 733, 747 (4th Cir. 2024). Plaintiffs bear the threshold obligation of showing that the 100-yard rule burdens their sincere religious practice. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524–25 (2022). Based on the record before it, the District Court "was not convinced that … Rabbi Shapiro had alleged a cognizable burden" because Plaintiffs "emphasize[d] how Jewish law obligates Rabbi Shapiro to walk to synagogue on the

Sabbath and Jewish holidays but does not clearly articulate a religious mandate to do so *while armed*." App.Dkt. 4-3 at 15 (emphasis in original).

The Motion seeks to recast Plaintiffs' asserted obligation of self-defense to "include[], but [not be] limited to, providing protection during worship services at the synagogue," and further seeks through Rabbi Shapiro's declaration alone to attribute the obligation to walk armed to "other congregants." App.Dkt. 4-1 at 27. The record before this Court is the same record the District Court found lacking. Appellate briefing cannot insert a religious mandate that the declarations themselves do not state. Indeed, the first time Plaintiffs raised this argument was after the District Court's denial of what it properly understood to be only Rabbi Shapiro's Free Exercise challenge. *See* App.Dkt. 4-6 at 25-26. "It's well established that an issue raised for the first time in a Rule 59(e) motion 'is not preserved for appellate review unless the district court exercises its discretion to excuse the party's lack of timeliness and consider the issue.'" *Deque Sys. Inc. v. Browserstack, Inc.*, 177 F.4th 585, 597 (4th Cir. 2026) (citation omitted). Thus, the Free Exercise inquiry as to the 100-yard rule ends at the outset, and Plaintiffs cannot show a likelihood of success on this claim.[3]

---

[3] Assuming *arguendo* the record could be read to support a belief requiring the walk to be made armed, only Rabbi Shapiro has described that walk or identified his route and the places of public assembly along it, such that any burden finding should be limited to him alone. *See* App.Dkt. 4-3 at 15 ("Rabbi Shapiro's declaration is the only one that specifically addresses the 100-yard buffers."). Moreover, that was not

### 2. The 100-Yard Rule Readily Survives Rational-Basis Scrutiny.

"[A] facially neutral and generally applicable ordinance is subject to rational basis review, 'even where it has the incidental effect of burdening religious exercise.'" *Alive Church of the Nazarene, Inc. v. Prince William Cnty., Virginia*, 59 F.4th 92, 108 (4th Cir. 2023) (citation omitted).

The Court below twice determined that in light of the 100-yard rule's general applicability, rational basis scrutiny was the applicable test. *See* App.Dkt. 4-5 at 55 ("The 100-yard restriction is a neutral and generally applied provision and only a rational basis must be shown."); App.Dkt. 4-3 at 17 ("[b]ecause the [100-yard rule] is both neutral and generally applicable, only rational basis review applies."). The challenger "bears the burden of negating any reasonably conceivable state of facts that could provide a rational basis." *Kim*, 93 F.4th at 749 (internal citation and quotations omitted). Considering that standard, the Court doubly found that Rabbi Shapiro "ha[d] not even attempted to show that rational basis is lacking," and noted Plaintiffs' concession that the County's interest "in protecting people from violence" is "a compelling interest." App.Dkt. 4-5 at 56; App.Dkt. 4-3 at 18 ("SSJC and Rabbi Shapiro had not even attempted to make that showing."). Even now on appeal, Plaintiffs do nothing to change the narrative.

---

the basis for SSJC's request for injunctive relief. *See* App.Dkt. 4-9 at 10-11 (concentrating facts on how the in-premises ban prohibited implementation of the synagogue's Security Plan).

### 3. The 100-Yard Rule is Generally Applicable.

The 100-yard rule is a "valid and neutral law of general applicability." *Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872, 879 (1990). "Government action is neutral if it 'has no object that infringes upon or restricts practices because of their religious motivation.'" *Kim*, 93 F.4th at 748 (citation omitted). The District Court held on two separate occasions that the 100-yard rule is neutral. *See* App.Dkt. 4-5 at 55 ("The 100-yard restriction is a neutral and generally applied provision and only a rational basis must be shown."); App.Dkt. 4-3 at 16 ("The 100-yard buffer provision is neutral because it does not discriminate on its face—it does not mention religion. … [i]t is also neutral because it was not enacted 'because of' but instead 'in spite' [of] its effect on religion."). Plaintiffs take no issue with either of these holdings. *See* App.Dkt. 4-1 at 27 (cabining argument to objections regarding the 100-yard rule's general applicability); *see also* App.Dkt. 4-8 at 10 (describing "lack of general applicability" as the "core of Plaintiffs' free exercise argument"). This Court should consider any neutrality argument waived.

A law is not generally applicable if the government has a mechanism for making exemptions on a case-by-case basis or if it permits secular conduct that similarly undermines the government's asserted interests. *See Kim*, 93 F.4th at 748. Plaintiffs have premised their objections to the general applicability of the 100-yard rule on the latter. They point to the vehicle exemption in § 57-11(b)(6)(B) and the

County's permittance of "licensed carriers to walk armed near many other places" that are not defined as places of public assembly. *See* App.Dkt. 4-1 at 29. Neither argument is persuasive.

a. The vehicle exception

The District Court held that Plaintiffs had not carried their burden as to the vehicle exception. App.Dkt. 4-3 at 17 ("The distinctions between carrying a firearm on foot versus in a car as dictated by the vehicle exemption do not demonstrate that the two activities undermine the County's interest in preventing gun violence 'in a similar way.'"). Sidestepping that holding entirely, the Motion merely recycles the two comparators originally offered on reconsideration. *See* App.Dkt. 4-6 at 29-30.

As the Supreme Court made clear, "[c]omparability … is concerned with the risks various activities pose." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). The interest against which that risk is measured is the one Plaintiffs themselves acknowledge: "preventing gun violence 'in or near places of public assembly.'" App.Dkt. 4-1 at 28. In pursuing that interest, the County drew its line at the vehicle. *See* Dkt. 26-10 at 7 (§ 57-11(b)(6) exempts only a "firearm that is carried or transported in a motor vehicle."). Once a carrier leaves his vehicle, the exception no longer applies. Plaintiffs' observation that the vehicle is close to the sidewalk and their corresponding argument that a permit holder in a vehicle "has the same opportunity to use a firearm that a pedestrian does," App.Dkt. 4-1 at 29, are both

unpersuasive. A firearm carried under clause (A) of the exception must be "locked in a container" (Dkt. 26-10 at 7), and cannot readily be drawn or used at the sensitive place, unlike a pedestrian's holstered handgun. To the extent Plaintiffs suggest that a permit holder could fire from the vehicle because, under clause (B), the firearm need not be locked away (*id.*), that suggestion revives the criminal-assailant theory Plaintiffs advanced below. *See* App.Dkt. 4-6 at 29 (arguing that "an assailant with a gun hidden in their car is less visible" and "has an easier time escaping").

b. The 'walking armed' comparison

Plaintiffs' remaining assertion is that the County permits licensed carriers to walk armed near "fraternal lodges, stores, [and] restaurants—none of which are a place of public assembly." App.Dkt. 4-1 at 29. On that basis, they contend that the District Court's treatment of fraternal lodges under the in-premises ban should apply equally to the 100-yard rule. *Id.* at 29-30. The District Court properly rejected this extension. After holding the in-premises ban not generally applicable, it explained that the buffer-zone claim did "not necessarily follow" because "[a] different provision is at work—one that applies to all designated places of public assembly," making the "100-yard restriction [ ] a neutral and generally applied provision." App.Dkt. 4-5 at 55.

The District Court found lodges comparable to places of worship based on shared characteristics. *Id.* at 51-52. It found the in-premises ban not generally

applicable, however, because in its view, private owners of businesses including lodges, "have the latitude to decide for themselves whether to allow firearms on the premises while denying the same autonomy to places of worship." *Id*. at 52 (internal citations and quotation marks omitted). The District Court concluded that the in-premises ban failed "because the challenged provisions of Chapter 57 apply differently as to places of worship in comparison to not only fraternal lodges, but numerous other privately owned businesses and properties." *Id*. at 52-53. The 100-yard rule, by contrast, gives no owner, whether of a secular or religious place of public assembly, any latitude over carriage on the property within 100 yards of its premises.

Comparability "must be judged against the asserted government interest that justifies the regulation at issue." *Tandon*, 593 U.S. at 62. Plaintiffs already have accepted that interest as preventing gun violence "'in or near places of public assembly.'" App.Dkt. 4-1 at 28. The County's use of the 100-yard rule finds its roots in its express authority under Maryland state law to regulate firearms in this manner. Md. Code Ann., Crim. Law § 4-209(b)(1)(iii). The language of the Bill was carefully crafted to stay within the articulated scope of the County's authority, and included both secular and religious places of public assembly in express keeping with the State's articulation. Thus, lodges, stores and restaurants are excluded from the 100-yard rule—not because they are "secular" vs. "religious," but because they are

beyond the legislated reach of the County's authority. Any challenge to that distinction would require a finding that the state's law itself is unconstitutional.[4]

## II. PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE HARM

Plaintiffs fail to make a clear showing that "irreparable injury is *likely* in the absence of an injunction." *Winter,* 555 U.S. at 22 (emphasis in original). The harm to be suffered may not be "remote [o]r speculative, but actual and imminent." *Mountain Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197, 216 (4th Cir. 2019) (citation and quotations omitted).

The District Court proceedings further minimize—if not eliminate altogether—the likelihood and/or irreparability of injury here. The District Court acknowledged that any criminal prosecutions for alleged violations of Bill 23-26E are deferred "until the constitutionality of that legislation has been finally resolved in this litigation." App.Dkt. 4-5 at 7 (citing Dkt. 25 at 1). Plaintiffs have submitted no evidence that either Rabbi Shapiro or any other SSJC member actually has been threatened with a civil fine. An arguable "once per week" (App.Dkt. 4-1 at 32) potential exposure to a civil fine does not rise to the level of "actual and imminent" irreparable injury. Seemingly acknowledging the lack of emergency, Plaintiffs

---

[4] No notice was provided pursuant to Md. Code Ann., Cts. & Jud. Proc., § 3-405 of a challenge to the constitutionality of the State's law.

delayed in filing their Motion to Alter or Amend, and did not seek any expediting of consideration.

## III. The Balance of Equities and Public Interest Weigh Against An Injunction Pending Appeal

When injunctive relief is sought against the government, the third and fourth elements necessary for an injunction—the balance of the equities and the public interest—"merge." *See Nken*, 556 U.S. at 435.

"'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (internal citation omitted). That notion applies equally to the County here. Moreover, a government's "[i]nability to enforce its duly enacted plans clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018). This is especially true when the law involves public safety. *See Maryland*, 567 U.S. at 1303.

Courts historically recognize that public safety is a compelling governmental interest. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 750 (1987) ("the Government's general interest in preventing crime is compelling"); *Schall v. Martin*, 467 U.S. 253, 264 (1984) ("[t]he legitimate and compelling state interest in protecting the community from crime cannot be doubted" (citation and quotations omitted)). The Founders reserved to the states, and by extension local governments,

police powers to protect the public and to prevent violence. *See United States v. Morrison*, 529 U.S. 598, 618 (2000) (stating there is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims"). Staying enforcement of the 100-yard rule will undermine the strong interest that the County has in the safety of the public, and in preventing gun violence in areas where people, especially vulnerable populations, congregate.

Finally, "there is a public interest in not prematurely enjoining Section 57-11 before a final determination on constitutionality is made." *Maryland Shall Issue*, 680 F. Supp. 3d at 594. This fact weighs especially in favor of the County here, when Plaintiffs have asserted no previous challenge to a County law that has been on the books for decades.

## CONCLUSION

Plaintiffs fail to demonstrate all four factors for injunctive relief. The Motion should be denied.

Respectfully submitted,

JOHN P. MARKOVS
COUNTY ATTORNEY

By:

/s/ Jeffrey M. Schwaber
Jeffrey M. Schwaber
jschwaber@steinsperling.com
(301) 354-8110 (facsimile)
Deanna L. Peters
dpeters@steinsperling.com
(301) 354-8131 (facsimile)
STEIN SPERLING BENNETT
DE JONG DRISCOLL PC
1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852
(301) 340-2020

/s/ Erin J. Ashbarry
Erin J. Ashbarry
Chief, Division of Government Operations
erin.ashbarry@montgomerycountymd.gov
Office of the County Attorney
101 Monroe Street, Third Floor
Rockville, Maryland 20850
Tel: (240) 777-6700
Fax: (240) 777-6705

Attorneys for Defendant/Appellee,
Montgomery County, Maryland

## CERTIFICATE OF COMPLIANCE

1. This Opposition complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4,801 words.

2. This Opposition complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Jeffrey M. Schwaber
Jeffrey M. Schwaber

## INDEX OF ATTACHMENTS

(Fed. R. App. P. 8(a)(2)(B))

1. Exhibit 1 to Opposition by Defendants, Montgomery County, Maryland, Marc Elrich, and Marc Yamada to Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction (Aug. 23, 2026) (Dkt. 26-3)

2. Exhibit 2 to Opposition by Defendants, Montgomery County, Maryland, Marc Elrich, and Marc Yamada to Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction (Aug. 23, 2026) (Dkt. 26-4)

3. Exhibit 4 to Opposition by Defendants, Montgomery County, Maryland, Marc Elrich, and Marc Yamada to Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction (Aug. 23, 2026) (Dkt. 26-6)

4. Exhibit 5 to Opposition by Defendants, Montgomery County, Maryland, Marc Elrich, and Marc Yamada to Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction (Aug. 23, 2026) (Dkt. 26-7)

5. Exhibit 7 to Opposition by Defendants, Montgomery County, Maryland, Marc Elrich, and Marc Yamada to Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction (Aug. 23, 2026) (Dkt. 26-9)

6. Exhibit 8 to Opposition by Defendants, Montgomery County, Maryland, Marc Elrich, and Marc Yamada to Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction (Aug. 23, 2026) (Dkt. 26-10)

7. Plaintiffs' Notice of Voluntary Dismissal of Defendant John McCarthy Without Prejudice (Aug. 24, 2026) (Dkt. 25)

8. Transcript of Preliminary Injunction Hearing (Sept. 3, 2026) (excerpts) (Dkt. 38)