# EXHIBIT 7

Agenda Item #4B
November 15, 2022
**Action**

# M E M O R A N D U M

November 10, 2022

TO: County Council

FROM: Christine Wellons, Senior Legislative Attorney

SUBJECT: Expedited Bill 21-22, Weapons – Firearms In or Near Places of Public Assembly

PURPOSE: Final action – roll call vote expected

| **Committee recommendation 3- :** approval of Bill 21-22 with amendments |
|---|

Bill 21-22, Weapons – Firearms In or Near Places of Public Assembly, sponsored by Lead Sponsor Council President Albornoz and Co-Sponsored by Councilmembers Hucker, Friedson, Navarro, Jawando, Riemer, Katz, Council Vice-President Glass and Councilmember Rice, was introduced on July 12, 2022. A Public Hearing occurred on July 26, 2022 and a Public Safety Committee worksession was held on October 31, 2022. Final action is scheduled for November 15, 2022.

Expedited Bill 21-22 would:

(1) prohibit the possession of firearms in or near places of public assembly, with certain exemptions;

(2) remove an exemption that allows individuals with certain handgun permits to possess handguns within 100 yards of a place of public assembly: and

(3) generally amend the law regarding restrictions against firearms in the County.

## Background

In the Supreme Court decision of *New York State Rifle & Pistol Assn. v. Bruen, Superintendent of New York State Police,* Slip Opinion No. 20-843 (June 23, 2022), available at https://www.supremecourt.gov/opinions/21pdf/20-843_7j80.pdf, the Supreme Court overturned a requirement of New York's handgun carry law. The New York law had required an applicant for a handgun carry license to show "proper cause" for the license, and the Supreme Court held that the requirement violated the Second Amendment's right to bear arms. The Court explained, however, that "longstanding" "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" are constitutionally permissible.

Like New York, Maryland has a proper-cause requirement for wear-and-carry handgun licenses. *See* Md. Code Ann., Public Safety Section 5-306. Governor Hogan, in response to *Bruen*, instructed the Maryland State Police not to enforce the proper-cause element of the Maryland law. https://governor.maryland.gov/2022/07/05/governor-hogan-directs-maryland-state-police-to-suspend-good-and-substantial-reason-standard-for-wear-and-carry-permits/. Subsequently, the Court of Special Appeals struck down Maryland's proper cause requirement in late July. *In re Rounds*, 255 Md. App. 205 (2022).

As a result of the Supreme Court eliminating "just cause" requirements, more individuals in Maryland likely will carry firearms, regardless of whether the individuals have any good or substantial reason to carry them.

**BILL SPECIFICS**

Expedited Bill 21-22 would **prevent an individual from possessing a firearm within 1 yards of a place of public assembly even when the individual has a wear-and-carry permit from the State of Maryland**. This restriction would strengthen current County law, which exempts individuals with permits from the restriction against carrying weapons within 100 yards of places of public assembly.

**LEGAL FRAMEWORK**

Maryland law specifically allows counties to regulate the possession of certain firearms within 100 yards of a place of public assembly. Under the Criminal Law Article of the Maryland Code, § 4-209:

**State preemption**

(a) Except as otherwise provided in this section, the State preempts the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of:

(1) a handgun, rifle, or shotgun; and

(2) ammunition for and components of a handgun, rifle, or shotgun.

**E ceptions**

(b)(1) A county, municipal corporation, or special taxing district **may regulate the purchase, sale, transfer, ownership, possession, and transportation** of the items listed in subsection (a) of this section:

(i) with respect to minors;

(ii) with respect to law enforcement officials of the subdivision; and

(iii) except as provided in paragraph (2) of this subsection, **within 1 yards of or in a park, church, school, public building, and other place of public assembly**.

(2) A county, municipal corporation, or special taxing district may not prohibit the teaching of or training in firearms safety, or other educational or sporting use of the items listed in subsection (a) of this section.

(Emphasis added).

There are many instances in which the State limits a person's ability to carry a weapon, regardless of whether the person has a permit. *See* the Maryland State Police website, https://mdsp.maryland.gov/Organization/Pages/CriminalInvestigationBureau/LicensingDivision/Firearms/WearandCarryPermit.aspx, which lists numerous state areas, such as State parks and State buildings, where a concealed carry permit does not apply. Currently, the State law prevents permit carriers from possessing firearms at specific locations including school property, state buildings (not County buildings), state parks, the General Assembly, aircraft, Maryland Rest Areas, and certain daycares. *See id.*

Notably, these restricted areas identified by the State Police do not include certain areas within the County's broader definition of "place of public assembly" – which was amended under Bill 4-21 bill to mean "a place where the public may assemble, whether the place is publicly or privately owned, including a park; place of worship; school; library; recreational facility; hospital; community health center; long-term facility; or multipurpose exhibition facility, such as a fairgrounds or conference center. A place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building."

**SUMMARY OF PUBLIC HEARING**

On July 26, 2022, the Council heard extensive testimony regarding Expedited Bill 21-22. (  15). Many speakers supported the bill as necessary for public safety. Many speakers opposed the bill based upon Second Amendment and safety concerns.

**SUMMARY OF PUBLIC SAFETY WORKSESSION**

The Committee discussed the following issues, and adopted the following amendments.

1. **Supreme Court Approach to Identifying  Sensitive Places    *i.e.*, places where Guns may be Banned**

Prior to *Bruen*, the judicial test to review firearms regulations consisted of two parts: (1) whether a gun regulation was consistent with Constitutional text and history; and (2) whether the regulation satisfied a means-ends balancing test (consisting of strict or intermediate scrutiny). Under *Bruen*, the Court has shifted so that only the first part of the test now matters; if the court concludes that a regulation is not consistent with the Constitutional text and history, it is invalid. It can no longer be resuscitated by a balancing test.

In *Bruen*, the Supreme Court explicitly rejected New York's identification of "sensitive places" where firearms may be banned, even for individuals who have wear-and-carry permits:

> Although we have no occasion to comprehensively define "sensitive places" in this case, ***we do think respondents err in their attempt to characterize New York's proper-cause requirement as a "sensitive-place" law. In their view, "sensitive***

> ***places" where the government may lawfully disarm law-abiding citizens include all "places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available."*** Brief for Respondents 34. It is true that people sometimes congregate in "sensitive places," and it is likewise true that law enforcement professionals are usually presumptively available in those locations. ***But expanding the category of "sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly.*** Respondents' argument would in effect exempt cities from the Second Amendment and would eviscerate ***the general right to publicly carry arms for self-defense***….
>
> Slip opinion at 21 (emphasis added).

The Court went on to identify five locations – schools, legislative assemblies, government buildings, polling places, and courthouses – it considers to be "sensitive places" where weapons may be totally prohibited. The Court left open the possibility that other locations where weapons were historically banned – or the modern counterparts of those locations – might qualify as "sensitive places."

> …. **A *nalogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster**.
>
> Consider, for example, Heller's discussion of ***"longstanding" "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings***." 554 U. S., at 626. Although the historical record yields relatively few 18th- and 19th-century "sensitive places" where weapons were altogether prohibited—***e.g., legislative assemblies, polling places, and courthouses***—we are also aware of no disputes regarding the lawfulness of such prohibitions. See D. Kopel & J. Greenlee, The "Sensitive Places" Doctrine, 13 Charleston L. Rev. 205, 229–236, 244–247 (2018); see also Brief for Independent Institute as Amicus Curiae 11–17. We therefore can assume it settled that these locations were "sensitive places" where arms carrying could be prohibited consistent with the Second Amendment. ***And courts can use analogies to those historical regulations of "sensitive places" to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible***.
>
> Slip opinion at 21 (emphasis added).

**2. Amendments to the Definition of Place of Public Assembly**

The County currently defines a "place of public assembly" as follows:

> Place of public assembly: A "place of public assembly" is a place where the public may assemble, whether the place is publicly or privately owned, including a park; place of worship; school; library; recreational facility; hospital; community health

center; long-term facility; or multipurpose exhibition facility, such as a fairgrounds or conference center. A place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building. (Sec. 57-1).

In order to make this definition more closely aligned with *Bruen*'s approach to "sensitive places" (as discussed above) – and in order to include places that *Bruen* has specifically said do qualify as "sensitive places" – the Committee voted to adopt the following amendment.

*After line 1, add the following.*

**57-1. Definitions**

* * *

Place of public assembly: A "place of public assembly" is:

(1) a place where the public may assemble, whether the place is publicly or privately owned: , including a

(A) park;

(B) place of worship;

(C) school;

(D) library;

(E) recreational facility;

(F) hospital;

(G) community health center, including any health care facility or community-based program licensed by the Maryland Department of Health;

(H) long-term facility, including any licensed nursing home, group home, or care home; or

(I) multipurpose exhibition facility, such as a fairgrounds or conference center; or

(J) childcare facility;

(2) government building, including any place owned by or under the control of the County;

(3) polling place;

(4) courthouse;

(5) legislative assembly; or

(6) a gathering of individuals to collectively express their constitutional right to protest or assemble.

A "place of public assembly" includes all property associated with the place, such as a parking lot or grounds of a building.

* * *

**3. Severability Clause**

Given the fluctuating jurisprudence regarding the Second Amendment, the Committee voted to add a "severability clause" to the bill. The purpose of the severability clause is to explicitly reflect the Council's intent that if any portion of the bill is found to be invalid, the remainder of the bill must remain in effect. This is important so that if a court were to strike down portions of the County's law against carrying firearms in "places of public assembly", the remainder of the law would be enforceable.

*After line 31, insert the following.*

**Sec. 3. Severability.** If any provision of this Act, or any provision of Chapter 57, is found to be invalid by the final judgment of a court of competent jurisdiction, the remaining provisions must be deemed severable and must continue in full force and effect.

**. Alignment with Maryland Law**

After the adoption of Council Bill 4-21 (Ghost Guns), the General Assembly adopted ghost gun legislation requested by Attorney General Frosh (Chapter 1 of the 2022 Laws of Maryland).

In order to align County ghost gun definitions with those of the new state law – and in order to acknowledge that the ghost gun laws must be interpreted in accordance with regulations of the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives – the Committee adopted the following amendments.

*After line 1, add the following.*

**57-1. Definitions**

* * *

*Gun* or *firearm:* Any rifle, shotgun, revolver, pistol, ghost gun, undetectable gun, air gun, air rifle or any similar mechanism by whatever name known which is designed to expel a projectile through a gun barrel by the action of any explosive, gas, compressed air, spring or elastic.

* * *

(2) "Ghost gun" means a firearm, including an unfinished frame or receiver, that:

(A) lacks a unique serial number engraved or cased in metal alloy on the frame or receiver by a licensed manufacturer, maker or importer under in accordance with federal law; and

(B) lacks markings and is not registered with the Secretary of the State Police in accordance with 27 C.F.R. § 479.102 Section 5-703(b)(2)(ii) of the Public Safety Article of the Maryland Code.

It "Ghost gun" does not include a firearm that has been rendered permanently inoperable, or a firearm that is not required to have a serial number in accordance with the Federal Gun Control Act of 1968.

* * *

(8) "Undetectable gun" means:

* * *

(9) "Unfinished frame or receiver" means a forged, cast, printed, extruded, or machined body or similar article that has reached a stage in manufacture where it may readily be completed, assembled, or converted to be used as the frame or receiver of a functional firearm.

*Add the following uncodified section to Bill 21-22.*

**Sec. .** This Act and Chapter 57 must be construed in a manner that is consistent with regulations of the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, including 87 FR 24652 (effective August 24, 2022), as amended.

**5. Technical Correction**

The Committee voted to adopt the following technical amendment to correct a typographical error in Section 57-7(d).

**57-7. Access to guns by minors.**

* * *

(d) A person must not purchase, sell, transfer, possess, or transfer transport a ghost gun, including a gun created through a 3D printing process, in the presence of a minor.

* * *

**NE T STEP:** Roll call vote on whether to enact Expedited Bill 21-22 with amendments, as recommended by the Public Safety Committee.

| This packet contains: | Circle # |
| --- | --- |
| Expedited Bill 21-22 | 1 |
| Legislative Request Report | 7 |
| Fiscal Impact Statement | 8 |

| | |
|---|---|
| Racial Equity and Social Justice Impact Statement | 10 |
| Economic Impact Statement | 16 |
| Public Testimony | 18 |
| *Bruen* Decision | 84 |